IN THE UNITED STATES DISTRICT COURT FOR
THE EASTERN DISTRICT OF VIRGINIA
Alexandria Division

| | | |
|---|---|---|
| Svetlana Lokhova | ) | |
| | ) | |
|     Plaintiff, | ) | |
| | ) | |
| v. | ) | 19-cv-632 (TSE)(JFA) |
| | ) | |
| Stefan A. Halper, *et. al.*, | ) | |
| | ) | |
|     Defendants. | ) | |

## MEMORANDUM IN SUPPORT OF
## DEFENDANT'S MOTION FOR SANCTIONS

Defendant Stefan Halper respectfully asks this Court to impose sanctions upon Plaintiff and her counsel for bad faith litigation conduct pursuant to this Court's inherent authority. This Court has the inherent authority to impose sanctions for bad faith conduct as necessary "'to impose order, respect, decorum, silence, and compliance with lawful mandates.'" *Projects Management Co. v. DynCorp Int'l LLC*, 734 F.3d 366, 373 (4th Cir. 2013) (quoting *U.S. v. Shaffer Equipment Co.*, 11 F.3d 450, 461-63 (4th Cir. 1993)). Courts "recognize 'the need to preserve the integrity of the judicial process in order to retain confidence that *the process works to uncover the truth.*'" *Id*. at 376 (emphasis in the original, quoting *Silvestri v. Gen. Motors Corp.*, 271 F.3d 583, 590 (4th Cir. 2001)). That confidence is threatened by the bad faith litigation misconduct of the Plaintiff and her counsel in this case.

This Court can and should impose sanctions upon Plaintiff and Plaintiff's counsel for their bad faith litigation conduct of: (i) using this Court to make, publicize and disseminate vulgar and degrading accusations against Defendant Halper; (ii) making meritless accusations of defamation based solely on alleged statements that are not actually contained in the media

1

publications they cite; (iii) claiming defamation based upon obviously untimely allegedly defamatory statements.

### A. Making and Using This Court to Disseminate "Raf***er" Allegations.

In the first numbered paragraph of the Complaint, Plaintiff alleges that Defendant Halper is a "Ratf***er." Plaintiff immediately promoted the broad dissemination of this vulgar and degrading accusation by linking the Complaint on his Court's website to her promotional (Go Fund Me) website seeking contributions ostensibly to pay for the prosecution of her claims against Defendant. *See* https://www.gofundme.com/f/supportsvetlanalokhova.  Specifically, Plaintiff's Go Fund Me website urges visitors to see the Complaint on this Court's website:

"See the details of my complaint here:

https://www.courtlistener.com/recap/gov.uscourts.vaed.442627/gov.uscourts.vaed.442627.1.0_5.pdf.

The use of the word "Ratf***er" in a complaint, not merely as an expletive, but to describe the Defendant, is as purposeful a misuse of this Court's process as imaginable, and cannot be explained, excused, or overlooked. There is no way that the decision to plead this invective was accidental or the result of a misunderstanding. It was intended to degrade Defendant Halper and to aggrandize Plaintiff and her counsel, for their mutual profit.

The use of this vile accusation serves no legal purpose—it is unnecessary to explain or to satisfy the elements of Plaintiff's legal claims. The only apparent purpose of this vulgar accusation is to convert this lawsuit (and this Court) into a source of publicity and notoriety for Plaintiff and her counsel. Plaintiff and her counsel are using this Court's docket to host this outrageous invective for their own profit and fame beyond this Courthouse. That is not the purpose of this Court, or of its mission to dispense justice herein.

The particular mechanism chosen to accomplish this improper object—the embedding of the "Ratf***er" accusation in a filed complaint, which Plaintiff then linked to her internet Go Fund Me website to market this accusation to a global audience—is a transparent effort to shield the broadcasting of this outrageous charge from liability through the privilege applied to federal pleadings filed in good faith. *See Spencer v. American Int'l Grp., Inc.*, 2009 WL 47111, *5 (E.D. Va. Jan. 6, 2009) (citing *Donohoe Constr. Co. v. Mount Vernon Assocs.*, 235 Va. 531, 537 (1988)). This is not good faith litigation conduct. This ploy reflects the perspective of a lawyer versus that of a layperson.

The Court has the inherent authority to sanction Plaintiff and her counsel for the use of this vulgar and degrading profanity. *See, e.g., Carrol v. Jacques Admiralty Law Firm, PC*, 110 F.3d 290 (5th Cir. 1997) (sanctioning attorney for abusive, profane, and vile language at deposition). More important, this Court must have the authority to prevent litigants from conscripting this Court, and its necessary docketing practices, into a protected hosting platform for the broad dissemination of such gratuitous vile accusations over the internet for their gain.

This Court's docket is not a political blog lacking the basic restraints of decency. This Court has an institutional need to deter such bad faith conduct from Plaintiff, her counsel, and any other litigant who would similarly misuse this Court.

This is especially necessary in this case because the filed legal claims are themselves transparently defective, thereby revealing that the *raison d'etre* of the suit is the propagation of Plaintiff's invective for the ulterior purpose of promoting her critique of an FBI investigation.

### B. Plaintiff's Bad Faith Misrepresentation of the Allege Defamation.

The core defamation claimed in the Complaint is that: "Halper misrepresented that Plaintiff was a 'Russian spy' and a traitor to her country and that Plaintiff had an affair with General Flynn on the orders of Russian intelligence." Complaint, ¶ 3. The bulk of the Complaint is devoted to claims that Mr. Halper was a source used by the media to republish these two allegedly defamatory statements (Russian spy, Flynn affair). *Id.*, ¶¶ 105, 115, 121, 150, 157. The problem with this representation is that none of the cited media articles contain either statement—none of the eight cited media articles contain a representation that Plaintiff is a Russian spy or had an affair with General Flynn.

The articles themselves demonstrate that they contain no spy or affair allegations. And Plaintiff could not have misread them. In April 2019, Plaintiff demanded by tweet that the New York Times set the record straight, to which it responded:

> But, for the NYT there was no record to set straight. We never named you in any story, nor did we claim that you were a Russian spy.

Exhibit 1, p. 5.

Thus, Plaintiff was told the obvious before filing this suit—the New York Times coverage of her never claimed she was a Russian spy. Despite this, Plaintiff then filed this lawsuit claiming that the New York Times did so with Halper as its source. Complaint, ¶ 150.

Furthermore, the Complaint contains not a single fact to support either the allegation that Mr. Halper was a media source or that he was a source for the two defamatory statements (Russian spy, General Flynn affair). Indeed, the Complaint chronicles and quotes the extensive and continuing dialogue between Plaintiff and the relevant journalists surrounding each article, and in those exchanges as reported in the Complaint, neither side attributes therein any such statement to Mr. Halper. Complaint, ¶¶ 101-103, 106, 113, 128-33, 158, 160.

**C. Plaintiff's Bad Faith Assertion of Untimely Defamation Claims**.

The Complaint's repeated assertions of defamation claims that are clearly barred under the applicable one-year statute of limitations constitutes sufficient grounds for the imposition of sanctions. *Brubaker v. City of Richmond*, 943 F.2d 1363, 1384 (4th Cir. 1991). Plaintiff had her United Kingdom defamation claim dismissed as untimely in 2016 under the one-year limitations statute applicable in the United Kingdom where Plaintiff lives. Exhibit 2. Hence, Plaintiff could not have labored under any misunderstanding in this case as to need for timely bringing defamation claims.

All but one of the articles cited in the Complaint was published more than a year before the commencement of this defamation suit, rendering them untimely under Va. Code § 8.01-27.1 ("Every action for injury resulting from libel, slander, insulting words or defamation shall be brought within one year after the cause of action accrues."). None of the articles claim Defendant Halper as their source.

More important, the only arguably timely article--the Washington Post article of June 5, 2018—affirmatively denies that Mr. Halper made any comment to the Post. In short, Plaintiff has no good faith basis to allege that Mr. Halper was a source of any of the articles. Despite this, the Complaint repeatedly alleges that Defendant Halper was a source for these articles. Complaint, ¶¶ 97, 115, 121, 150, 157.

Equally obvious, if the actual published articles constitute an untimely basis for a defamation claim because they were published more than a year prior to suit,[1] any prior alleged

---

[1] Defamation actions accrue on the date of publication. *Mercer v. Fairfax County Child Protective Services*, 2015 WL 5037636, *6 (E.D. Va. 2015) (citing *Hatfill v. N.Y. Times Co.,* 416 F.3d 320, 334 (4th Cir. 2005)), *aff'd on other grounds*, 673 Fed. Appx. 358 (4th Cir. 2017).

statement of Mr. Halper as their "source" would likewise constitute an untimely basis for a defamation claim. *See Spencer*, 2009 WL 47111, *5 (statements made prior to untimely publication are themselves untimely).

Even as to the only arguably timely article—the Washington Post article of June 5, 2018—the Complaint admits that the only "falsehoods" contained therein are about Mr. Halper's attendance at a 2014 Cambridge dinner, and whether Halper and another attendee were "disconcerted" about Flynn's attention to Plaintiff at that dinner. Complaint, ¶ 162. The only statement about Plaintiff was her own statement to the Post denying that anything inappropriate occurred at the dinner. *Id.*, ¶ 161 (quoting Post article). Such allegations are not remotely defamatory *per se*, and are nonactionable. Nor could they cause any reputational harm to Plaintiff, even in a faculty lounge. The thinness of this gruel is apparent.

Bringing obviously untimely and insufficient defamation claims, particularly to launch an internet financing and marketing campaign, constitutes bad faith litigation.

**D. This Court Should Award Appropriate Sanctions.**

Defendant Halper respectfully asks this Court to consider imposition of the following escalating sanctions: (i) the reasonable attorney fees incurred in responding to the Complaint: (ii) an order suspending Plaintiff's counsel from practice before this Court (the United States District Court for the Eastern District of Virginia) for a period of at least 90 days; and (iii) dismissal of this case.

An award of the attorney fees caused by a litigant's bad faith conduct is a permissible sanction under this Court's inherent authority. *Goodyear Tire & Rubber Co. v. Haeger*, 137 S. Ct. 1178 (2017). The misconduct at issue is the filing of a meritless and profane Complaint, which has caused the attorney fees necessary to seek its dismissal. If this Court determines that

this sanction is justified, Halper defense counsel will submit a fee application to the Court for purposes of determining an appropriate fee sanction.

Suspension of Plaintiff's counsel from practice before this Court is justified because the bad faith misconduct affects not only Defendant Halper and his reputation, but also harms this Court. This harm is not limited to the resources needed to respond to an untimely and meritless Complaint. It includes the misuse of this Court's docketing system as clickbait to propagate vulgar and degrading accusations around the internet, for the profit of Plaintiff and her counsel. This Court, like all federal courts, is not equipped to address such bad faith practices at the time of the filing of a complaint; rather, it traditionally awaits the outcome of service of process and the ensuring responsive process. The Court, therefore, must rely upon the professionalism of the lawyers licensed to appear before it to avoid drive-by slander at the outset of a case. Such reliance is misplaced here.

Revoking filing privileges before this Court is an authorized sanction for bad faith litigation conduct. *See, e.g., Allen v. Fitzgerald for Region Four*, 590 B.R. 352, (W.D. Va. 2018) (filing privileges suspended for 6 months). In *Allen*, Chief Judge Urbanski upheld a privilege revocation sanction imposed by the bankruptcy court under its inherent authority, and noted that such a sanction does not constitute an injunction, and does not affect litigation privileges in other courts. *Id.* at 356-59.

Finally, this Court should consider the ultimate sanction of dismissal. Whether to impose this sanction is guided by the so-called *Shaefer Equipment* factors:

> '(1) the degree of the wrongdoer's culpability; (2) the extent of the client's blameworthiness if the wrongful conduct is committed by its attorney, recognizing that we seldom dismiss claims against blameless clients; (3) the prejudice to the judicial process and the administration of justice; (4) the prejudice to the victim; (5)

7

>the availability of other sanctions to rectify the wrong by punishing culpable persons, compensating harmed persons, and deterring similar conduct in the future; and (6) the public interest.'

*Projects Management*, 734 F.3d at 373-74 (*Shaeffer Equipment*, 11 F.3d at 462-63).

Here, degree of culpability is overwhelming and is shared by Plaintiff and her counsel: both are familiar with the applicable limitations period; both are familiar with the non-defamatory nature of the publications at issue; both understand the bombastic nature of the invective with which they began their suit. Plaintiff is not blameless in this matter.

The prejudice to the judicial process and the administration of justice goes well beyond the needless diversion of judicial resources to address a meritless complaint. The Court is being conscripted to host and involuntarily propagate vile accusations over the internet to promote the extra-judicial objectives of both Plaintiff and her counsel. Mr. Halper is a victim of not just meritless charges but also of an outrageous accusation now posted over the internet that, as a result, cannot be effectively recalled by this Court. This Court regularly sees meritless claims, but few that transparently trade upon a lack of merit to create an opportunity to promote ulterior extra-judicial objectives. While other sanctions are available, as previously discussed, they are insufficient to deter similar conduct in the future because they cannot restore the *status quo ante*. The public interest is served by this Court rejecting this gambit through the emphatic sanction of dismissal.

## Conclusion

For the foregoing reasons, this Court should invoke its inherent authority to impose the sanctions of a fee-reimbursement, revocation of court privileges for 90 days, and dismissal.

Respectfully submitted,

By: ____/s/_____
Terrance G. Reed (VA Bar No. 46076)
Robert K. Moir (VA Bar No. 42359)
Lankford & Reed, PLLC
120 N. St. Asaph St.
Alexandria, VA 22314
(Phone): 703-299-5000
(Facsimile): 703-299-8876
tgreed@lrfirm.net
rkmoir@lrfirm.net

Robert D. Luskin (DC Bar 293621)
(*pro hac vice* application pending)
Paul Hastings LLP
875 15th ST NW
Washington, DC 20005
(Phone): 202-551-1966
(Facsimile): 202-551-0466
robertluskin@paulhastings.com

*Counsel for Defendant*
*Stefan A. Halper*

August 8, 2019

## **CERTIFICATE OF SERVICE**

I hereby certify that on this 8th day of August, 2019, I electronically filed the foregoing Motion using the CM/ECF system which will then send a notification of such filing (NEF) to all interested parties.

By: ____/s/_____
Terrance G. Reed (VA Bar No. 46076)