**IN THE UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF VIRGINIA
Alexandria Division**

**SVETLANA LOKHOVA,**

**Plaintiff,**

**vs.**

**Civil No.:  1:19-cv-00632-TSE-JFA**

**STEFAN A. HALPER, DOW JONES &
COMPANY, INC., THE NEW YORK
TIMES COMPANY, WP COMPANY,
LLC, AND NBCUNIVERSAL MEDIA
LLC,**

**Defendants.**

**MEMORANDUM OF LAW IN SUPPORT OF MOTION TO DISMISS COMPLAINT
OF DEFENDANT THE NEW YORK TIMES COMPANY**

John Hundley (VSB No. 36166)
Alexander R. Green (VSB No. 83937)
LeClairRyan PLLC
2318 Mill Road, Suite 1100
Alexandria, Virginia 22314
Tel: 703-647-5976
Fax: 703-647-5988
Email: alexander.green@leclairryan.com

Dana R. Green (admitted *pro hac vice*)
The New York Times Company
Legal Department
620 8th Avenue
New York, NY 10018
Tel: 212-556-5290
Fax: 212-556-4634
Email: dana.green@nytimes.com

*Attorneys for The New York Times Company*

## TABLE OF CONTENTS

PRELIMINARY STATEMENT ................................................................................................. 1

STATEMENT OF FACTS ...................................................................................................... 2

I.      PLAINITFF ................................................................................................................. 2

II.     THE CAMBRIDGE INTELLIGENCE SEMINAR.................................................... 2

III.    THE ARTICLE .......................................................................................................... 3

IV.    THE COMPLAINT .................................................................................................... 5

ARGUMENT ........................................................................................................................... 6

I.      CHOICE OF LAW ..................................................................................................... 6

II.     LOKHOVA'S DEFAMATION CLAIM IS BARRED BY THE
STATUTE OF LIMITATIONS ................................................................................. 7

        A.  Hyperlinking Does Not Constitute Republication.................................................... 8

        B.  Unrelated Third Parties' Publication of the Article or its Contents does not Restart
the Statute of Limitations for Claims against The Times......................................... 9

III.    THE STATEMENTS AT ISSUE ARE NOT ACTIONABLE AS A
MATTER OF LAW .................................................................................................. 11

        A.  The Statements at Issue Lack Defamatory Meaning ............................................. 11

        B.  The Statements at Issue are Non-Actionable Opinion............................................ 13

        C.  The Statements at Issue are not "Of and Concerning"
Plaintiff as a Matter of Law.................................................................................. 14

IV.    PLAINTIFF'S REMAINING CLAIMS ALSO SHOULD BE DISMISSED.............. 16

CONCLUSION......................................................................................................................... 18

## **TABLE OF AUTHORITIES**

**Cases**

*ABLV Bank v. Ctr. for Advanced Def. Studies Inc.*, No. 1:14 cv 1118, 2015 U.S. Dist. LEXIS 181218 (E.D.Va. Apr. 21, 2015)................................................................................ 6

*Armstrong v. Bank of Am.*, 61 Va. Cir. 131 (Va. Cir. Ct. 2003) ................................................ 9, 10

*Ashcroft v. Iqbal*, 556 U.S. 662 (2009) ......................................................................... 6

*Bell Atl. Corp. v. Twombly*, 550 U.S. 544 (2007) ............................................................ 6

*Biospherics, Inc. v. Forbes, Inc.*, 151 F.3d 180 (4th Cir. 1998) .................................... 13

*Biro v. Condé Nast*, 171 A.D.3d 463 (NY App. Div. 2019).......................................... 8

*Blue Ridge Bank v. Veribank*, 866 F.2d 681 (4th Cir. 1988) ........................................ 10

*CACI Premier Tech., Inc. v. Rhodes*, 536 F.3d 280 (4th Cir. 2008)............................. 13

*Carlson v. Am. Int'l Grp., Inc.*, 89 N.E.3d 490 (N.Y. 2017) ........................................ 17

*Chaiken v. VV Publ'g Corp.*, 907 F. Supp. 689 (S.D.N.Y. 1995) ................................ 12

*Chapin v. Knight-Ridder, Inc.*, 993 F.2d 1087 (4th Cir. 1993)..................................... 12

*Chau v. Lewis*, 771 F.3d 118 (2d Cir. 2014)................................................................. 11

*Church of Scientology Int'l v. Behar*, 238 F.3d 168 (2d Cir. 2001) ............................ 14

*Clark v. Viacom Intern'l, Inc.*, 617 F. App'x 495 (6th Cir. 2015)................................ 8

*Dean v. Pilgrim's Pride Corp.*, 395 F.3d 471 (4th Cir. 2005)...................................... 7

*Doctor's Data, Inc. v. Barrett*, 170 F. Supp. 3d 1087 (N.D. Ill. 2016) ..................... 8, 9

*Duggin v. Adams*, 360 S.E.2d 832 (Va. 1987).............................................................. 17

*Flexible Benefits Council v. Feltman*, No. 08-371, 2008 U.S. Dist. LEXIS 46626 (E.D. Va. June 16, 2008) ................................................................................... 17

*Food Lion, Inc. v. Capital Cities/ABC, Inc.*, 194 F.3d 505 (4th Cir. 1999)................ 16

*Fornshill v. Ruddy*, No. 95-2490, 1996 U.S. App. LEXIS 14125 (4th Cir. June 11, 1996)......... 14

*Garcia v. Does*, 764 F.3d 170 (2d Cir. 2014) ............................................................. 5

*Hustler v. Magazine, Inc. v. Falwell*, 485 U.S. 46 (1988) .......................................... 16

*Immuno AG. v. Moor-Jankowski*, 567 N.E.2d 1270 (N.Y. 1991)........................................... 12, 13

*In re Phila. Newspapers, LLC*, 690 F.2d 161 (3d Cir. 2012).................................................. 8, 10

*Katz v. Odin, Feldman & Pittleman, P.C.*, 332 F. Supp. 2d 909 (E.D. Va. 2004) ....................... 7

*Klaxon Co. v. Stentor Elec. Mfg. Co.*, 313 U.S. 487 (1941) ......................................................... 7

*Krepps v. Reiner*, 588 F. Supp. 2d 471 (S.D.N.Y. 2008)............................................................ 16

*Lama Holding Co. v. Smith Barney*, 668 N.E.2d 1370 (1996) .................................................... 17

*Lesesne v. Brimecome*, 918 F. Supp. 2d 221 (S.D.N.Y. 2013) ................................................... 16

*Levin v. McPhee*, 119 F.3d 189 (2d Cir. 1997)..................................................................... 11, 13

*Lewis v. Gupta*, 54 F. Supp. 2d 611 (E.D. Va. 1999) ................................................................... 7

*Meyers v. Levinson*, 2005 U.S. Dist. LEXIS 42799 (E.D. Va. July 26, 2005) ......................... 7, 9

*Milkovich v. Lorain Journal Co.*, 497 U.S. 1 (1990) .................................................................. 13

*Mirage Entm't Inc v. FEG Entretenimientos S.A.*, 326 F. Supp. 3d 26 (S.D.N.Y. 2018) ............. 8

*Morrissey v. William Morrow & Co.*, 739 F.2d 962 (4th Cir. 1984)............................................. 7

*Mylan Labs., Inc. v. Matkari*, 7 F.3d 1130 (4th Cir. 1993).......................................................... 2

*New York Times Co. v. Sullivan*, 376 U.S. 254 (1964) ............................................................... 14

*Oberman v. Dun & Bradstreet, Inc.*, 586 F.2d 1173 (7th Cir. 1978).......................................... 10

*Phillips v. LCI Int'l, Inc.*, 190 F.3d 609 (4th Cir. 1999) ............................................................... 1

*Salyer v. Southern Poverty Law Center, Inc.*, 701 F. Supp. 2d 912 (W.D. Ky. 2009) ................. 8

*Scott v. Harris*, 550 U.S. 372 (2007) ............................................................................................ 5

*See Aronson v. Wiersma*, 483 N.E.2d 1138 (N.Y. 1985)............................................................. 15

*Sherman v. Litton Loan Servicing, L.P.,* 796 F. Supp. 2d 753 (E.D. Va. 2011) ........................... 5

*Sundance Image Technology, Inc. v. Cone Editions Press, Ltd.*, 2007 U.S. Dist. LEXIS 16356
  (S.D. Cal. Mar. 7, 2007)............................................................................................................ 8

*Three Amigos SJL Rest., Inc. v. CBS News Inc.*, 65 N.E.3d 35 (N.Y. 2016).............................. 14

*Tierney v. Vahle*, 304 F.3d 734 (7th Cir. 2002) .......................................................................... 16

*U.S. ex rel. Klein v. Omeros Corp.*, 897 F. Supp. 2d 1058 (W.D. Wash. 2012) .......................... 8

*Weaver v. Home Beneficial Co.*, 199 Va. 196, 98 S.E.2d 687 (Va. 1957) ..................................... 9

*Webb v. Virginian-Pilot Media Co., LLC*, 287 Va. 84, 752 S.E.2d 808 (Va. 2014).................... 11

*Weist v. E-Fense, Inc.*, 356 F. Supp. 2d 604 (E.D. Va. 2005) ....................................................... 6

**Statutes**

Va. Code. Ann. § 8.01-247 .......................................................................................................... 7

Fed. R. Civ. P. 12(b)(6)............................................................................................................. 1, 7, 8

**Other Authorities**

Adam Goldman et al., *F.B.I. Used Informant to Investigate Russia Ties to Campaign, Not to Spy, as Trump Claims*, N.Y. Times, May 18, 2018, https://nyti.ms/2KEZQKh ....................... *passim*

Sam Jones, *Intelligence experts accuse Cambridge forum of Kremlin links*, Financial Times, Dec. 16, 2016, https://on.ft.com/2hR9uPo ................................................................................... 5, 15

**Treatises**

1 Robert D. Sack, *Sack on Defamation* § 2:9.1 (4th ed. 2016) .................................................... 14

Defendant The New York Times Company ("The Times") by and through its undersigned counsel and pursuant to Local Civil Rule 7(F), submits this memorandum of law in support of its motion to dismiss for failure to state a claim. *See* Fed. R. Civ. P. 12(b)(6).

## PRELIMINARY STATEMENT

It is impossible to overstate the legal flaws in Lokhova's claims against The Times—claims that are not only time-barred but based on an article that does not even mention her by name. In May of 2018, The Times published an article (the "Article") about President Trump's May 2018 accusation that the Federal Bureau of Investigation ("FBI") secretly infiltrated his presidential campaign for political reasons and without a legitimate basis. *See* Adam Goldman et al., *F.B.I. Used Informant to Investigate Russia Ties to Campaign, Not to Spy, as Trump Claims*, N.Y. Times, May 18, 2018, https://nyti.ms/2KEZQKh (Exhibit A).[1] The Article disclosed that the FBI had used a confidential informant to covertly investigate two members of the Trump campaign, George Papadopoulos and Carter Page. In its closing paragraphs, the Article briefly reported that the informant also had contact with Lieutenant General Michael Flynn, who would later be a Trump aide, at a Cambridge University seminar in February 2014. *Id.* As reported in the Article, "the source was alarmed by the general's apparent closeness with a Russian woman who was also in attendance. The concern was strong enough that it prompted another person to pass on a warning to the American authorities that Mr. Flynn could be compromised by Russian intelligence, according to two people familiar with the matter." *Id.*

Based only on this brief reference to General Flynn, Lokhova alleges that The Times was part of a deep-state conspiracy to defame her, smear Flynn, and ultimately advance a "soft coup"

---

[1] The Complaint cites to and relies on a number of news articles, including the Article, some of them accessible only to subscribers. For the convenience of the Court, Defendant has attached as exhibits two articles relevant to its motion. The Court may properly consider these materials on a motion to dismiss "because [they are] integral to and explicitly relied on in the complaint." *Phillips v. LCI Int'l, Inc.*, 190 F.3d 609, 618 (4th Cir. 1999).

against President Trump.  She asserts claims against The Times for defamation, conspiracy, and intentional interference with business expectations.

Lokhova's lawsuit is patently without merit.  First, her defamation claim is barred by the statute of limitations.  Second, she fails to state a claim for defamation as a matter of law for multiple reasons: the statements at issue are not actionable because they lack defamatory meaning; they are non-actionable opinions; and they are not "of and concerning" plaintiff as a matter of law.  Third, Lokhova's two "tag along" claims for conspiracy and intentional interference with business expectations must also be dismissed because plaintiff cannot evade First Amendment protections by reframing defamation claims as other torts and those claims fail independently as a matter of law.

## STATEMENT OF FACTS

### I. PLAINITFF

Plaintiff, Svetlana Lokhova, is a Russian-born British academic specializing in the history of Soviet intelligence.[2]  Dkt. 1, Complaint ("Compl.") ¶¶ 11, 23.  At all times relevant to the Complaint, Lokhova was a postgraduate student and later a fellow of the Cambridge Security Initiative at the University of Cambridge in the United Kingdom.  *Id.* ¶¶ 30-31, 41, 53-55.

### II. THE CAMBRIDGE INTELLIGENCE SEMINAR

As part of her academic work, Lokhova participated in the Cambridge Intelligence Seminar (the "CIS" or "Seminar").  CIS is one of several research seminars within the Department of History at the University of Cambridge.  *See* University of Cambridge Faculty of History, *Intelligence Seminar*, https://www.hist.cam.ac.uk/seminars/intelligence.  CIS was relatively small, with "maybe 20 attendees," and its events attracted "intelligence community

---

[2] For the purposes of this motion to dismiss only, The Times treats as true the well-pleaded factual allegations of the Complaint.  *Mylan Labs., Inc. v. Matkari*, 7 F.3d 1130, 1134 (4th Cir. 1993)

members, academics, and researchers from around the World." Compl. ¶¶ 12, 33.  Other

prominent members of CIS with whom Lokhova worked closely included Sir Richard Dearlove,

the former head of MI6, and Christopher Andrew, the official historian to MI5.  *Id.* ¶¶ 27, 30, 40,

43-44, 53-58, 64-65, 68.  Through CIS, Lokhova also came into contact with Defendant Stefan

Halper.  *Id.* ¶¶ 31-34, 64-67.  Halper was the Director of American Studies in the Department of

Politics and International Studies at Cambridge University and the co-convener of CIS.  *Id.* ¶¶

12, 72.

On February 28, 2014, Lieutenant General Michael Flynn, then-Director of the United

States Defense Intelligence Agency ("DIA"), gave a public talk at CIS.  *Id.* ¶ 12; *see also*

University of Cambridge, Intelligence Seminar Lent Term 2014 Programme at 2,

https://bit.ly/2YsfCn2.  Later that day, he attended a dinner hosted by the University.  Compl. ¶¶

40-45.  Approximately 20 people attended the dinner, including Lokhova.  *Id.* ¶ 43.  Lokhova

was introduced to Flynn at the start of the dinner and sat opposite him at the table.  *Id.* ¶¶ 42-43.

After the dinner, she spoke with him publicly for approximately ten to twenty minutes.  *Id.* ¶¶ 44,

102, 132.  They discussed an "erotic" postcard sent by Stalin that Lokhova had discovered in

Russian archives.  Compl. ¶ 132.[3]  Flynn asked Lokhova to send him a copy of the postcard so

that he could use it as an icebreaker in meetings with Russian officials.  *Id.*  Lokhova exchanged

contact details with Flynn and the two initiated an email correspondence.  *Id.* ¶¶ 47, 132.

## III.    THE ARTICLE

On May 18, 2018, President Trump published the following message on Twitter:

---

[3] As cited to and incorporated into the Complaint, Lokhova has given several interviews
regarding the substance of her conversation with Flynn.  *See* Compl. ¶¶ 130, 132, 160.



https://tinyurl.com/y38q5ena.

Later that day, The Times published the Article, reporting on the President's tweet.  Ex. A.  The Article confirmed that the FBI used a confidential informant to covertly investigate two members of the Trump campaign, George Papadopoulos and Carter Page.  *Id.*  The Article focused on the origin and conduct of the investigation, detailing the ways the informant attempted to discern whether Papadopoulos and Page had been compromised by Russia, and the evidence he obtained.  *Id.*  Plaintiff asserts in her complaint that the unnamed FBI "informant" was defendant Stefan Halper.  Compl. ¶ 150.

The article concluded by noting that the informant also had contact with a third person later associated with the Trump administration:

> The informant also had contacts with Mr. Flynn, the retired Army general who was Mr. Trump's first national security adviser. The two met in February 2014, when Mr. Flynn was running the Defense Intelligence Agency and attended the Cambridge Intelligence Seminar, an academic forum for former spies and researchers that meets a few times a year.
>
> According to people familiar with Mr. Flynn's visit to the [CSI] intelligence seminar, the source was alarmed by the general's apparent closeness with a Russian woman who was also in attendance. The concern was strong enough that it prompted another person to pass on a warning to the American authorities that

4

Mr. Flynn could be compromised by Russian intelligence, according to two people familiar with the matter.

Two years later, in late 2016, the seminar itself was embroiled in a scandal about Russian spying. A number of its organizers resigned over what they said was a Kremlin-backed attempt to take control of the group.

The underlined text hyperlinked to a *Financial Times* article. Sam Jones, *Intelligence experts accuse Cambridge forum of Kremlin links*, Financial Times, Dec. 16, 2016, https://on.ft.com/2hR9uPo (hereinafter the "FT Article") (Exhibit B). *See also* Compl. ¶¶ 79-83. The FT Article reported that three conveners of CIS had resigned over "unacceptable Russian influence on the group." Compl. ¶ 80; FT Article. Their concern was a Russian-linked company named Veruscript that provided funding and logistical support to the seminar. FT Article. The FT Article did not mention anyone else as a concern. *See id.*[4]

## IV.    THE COMPLAINT

Plaintiff filed this lawsuit on May 23, 2019. The Complaint asserts one count each of defamation, common law conspiracy, and tortious interference. Lokhova asserts that the Article's reference to "a Russian woman" was about her and that the article falsely conveyed that Lokhova was "close" to Flynn and had "compromised" Flynn on behalf of Russian intelligence. She also alleges that The Times conspired with Halper to injure her reputation as part of a FBI scheme "to overthrow President Trump," and that the Article constituted tortious interference with her business activities because it deprived her of a book deal and other professional opportunities.

---

[4] The Complaint asserts the article was "of and concerning Lokhova." Compl. ¶ 81. This is a legal conclusion unsupported by the FT Article. The Court need not accept factual allegations contradicted or discredited by other documents in the pleadings. *Garcia v. Does*, 764 F.3d 170, 180 (2d Cir. 2014) (citing *Scott v. Harris*, 550 U.S. 372, 380 (2007)); *Sherman v. Litton Loan Servicing, L.P.*, 796 F. Supp. 2d 753, 763 (E.D. Va. 2011) ("The Court need not accept factual allegations in a complaint that are contradicted by the plain language of underlying documents upon which the complaint relies." (citation omitted)).

**ARGUMENT**

To survive a Rule 12(b)(6) motion to dismiss, plaintiff must set forth plausible factual allegations that, if proven, would be sufficient to establish each element of the alleged causes of action. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). A plaintiff must allege facts sufficient "to raise a right to relief above the speculative level." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (citation omitted). The claim must be "plausible on its face" rather than merely "conceivable." *Id.* at 570. Though a court must accept a plaintiff's well-pleaded allegations as true, it "can choose to begin by identifying pleadings that, because they are no more than conclusions, are not entitled to the assumption of truth." *Iqbal*, 556 U.S. at 679.

**I.   CHOICE OF LAW**

Because this is a case brought in diversity, the Court applies Virginia's choice of law rules. *Weist v. E-Fense, Inc.*, 356 F. Supp. 2d 604, 608 (E.D. Va. 2005) (citation omitted). In a defamation case, "Virginia applies the *lex loci delicti* rule, that is, the law of the place of the wrong." *Id.* at 608 (citation omitted). This is the place where the paper is published or the place from which the website is controlled. *See id.* (where the website at issue was controlled by corporate headquarters in Virginia, Viginia law applied); *ABLV Bank v. Ctr. for Advanced Def. Studies Inc.*, No. 1:14 cv 1118, 2015 U.S. Dist. LEXIS 181218, at **2-4 (E.D.Va. Apr. 21, 2015) (where alleged defamation was published online from an office in Washington, D.C., District of Columbia law applied). Here, the article was published in New York, Compl. ¶ 15, and Lokhova's claims against The Times are governed by New York law. Regardless of whether New York or Virginia law governs, however, the outcome is the same: Lokhova's claims fail as a matter of law.

Virginia generally treats statutes of limitation as procedural matters, subject to Virginia law, even where the substantive law of another state applies to the merits of the underlying

claims.  *See, e.g.*, *Lewis v. Gupta*, 54 F. Supp. 2d 611, 616 (E.D. Va. 1999) ("[T]he applicable

statute of limitations and its associated tolling provisions are procedural matters governed by the

law of the forum state, namely Virginia." (citing *Klaxon Co. v. Stentor Elec. Mfg. Co.*, 313 U.S.

487 (1941)).

## II.   LOKHOVA' DEFAMATION CLAIM IS BARRED BY THE STATUTE OF LIMITATIONS

Lokhova's defamation claim must be dismissed for the simple reason that her claim is

time-barred.  "[T]he statute of limitations as a bar to plaintiff's cause of action . . . may be raised

by motion pursuant to Fed. R. Civ. P. 12(b)(6), if the time bar is apparent on the face of the

complaint."  *Dean v. Pilgrim's Pride Corp.*, 395 F.3d 471, 474 (4th Cir. 2005) (citation omitted).

In Virginia, the statute of limitations for a defamation claim is one year.  Va. Code. Ann. § 8.01-

247 ("Every action for injury resulting from libel, slander, insulting words or defamation shall be

brought within one year after the cause of action accrues.").  *See also Meyers v. Levinson*, 2005

U.S. Dist. LEXIS 42799, at *40 (E.D. Va. July 26, 2005) (applying Virginia statute of limitations

to a defamation claim brought in diversity).  Virginia follows the "single publication rule."

*Morrissey v. William Morrow & Co.*, 739 F.2d 962, 967 (4th Cir. 1984).  Under that rule, a cause

of action for defamation accrues and the statute of limitation begins to run when the defamatory

material is first published.  *See Katz v. Odin, Feldman & Pittleman, P.C.*, 332 F. Supp. 2d 909,

914 (E.D. Va. 2004).  The subsequent reproduction and distribution of the original statement—

for example in multiple print runs, online, or via copies of a newspaper—does not re-start the

statute of limitations.  *Id.* ("[S]ubsequent distribution of a defamatory statement . . . does not

create independent actions or start the statute of limitations running anew.") (citation omitted).

Here, the Article was published May 18, 2018.  The one-year statute of limitations for

any defamation claim arising out of the Article ended on May 18, 2019.  The Complaint was

filed five days later, on May 23, 2019.  On that basis, alone, Lokhova's claims must be dismissed.

In an effort to overcome the statute of limitations and the single publication rule, Lokhova argues, first, that The Times "republished" the Article by hyperlinking to it in social media posts on May 18 and 19, 2018.  Compl. ¶ 155.  But even if those social media posts qualified as republications—and they do not—The Times' social media posts also are outside the statute of limitations.  Second, Lokhova argues that unrelated third parties' hyperlinks to or reproductions of the Article or its allegations should be deemed "republications" within the statute of limitations.  *Id.* (citing third party twitter posts, hyperlinking to the Article).  The argument is entirely without merit.

### A. Hyperlinking Does Not Constitute Republication

Courts repeatedly and consistently have held that hyperlinking to an article is not a "republication" that can support a defamation action.  *See, e.g.*, *Clark v. Viacom Intern'l, Inc.*, 617 F. App'x 495, 506 (6th Cir. 2015) (using a hyperlink to direct readers to a previously published article is not "republication"); *In re Phila. Newspapers, LLC*, 690 F.2d 161, 165-166 (3d Cir. 2012) (hyperlinks do not "republish" the linked article to support an action for defamation and collecting cases); *Mirage Entm't Inc v. FEG Entretenimientos S.A.*, 326 F. Supp. 3d 26, 39 (S.D.N.Y. 2018) (same); *Doctor's Data, Inc. v. Barrett*, 170 F. Supp. 3d 1087, 1137 (N.D. Ill. 2016) (same); *U.S. ex rel. Klein v. Omeros Corp.*, 897 F. Supp. 2d 1058, 1072-74 (W.D. Wash. 2012) (same); *Salyer v. Southern Poverty Law Center, Inc.*, 701 F. Supp. 2d 912, 915-918 (W.D. Ky. 2009) (hyperlinking is not a republication, to find otherwise "would undermine the purposes of applying the single publication rule to the internet"); *Sundance Image Technology, Inc. v. Cone Editions Press, Ltd.*, 2007 U.S. Dist. LEXIS 16356, at **20-21 (S.D.

Cal. Mar. 7, 2007) (hyperlinking not a republication); *Biro v. Condé Nast*, 171 A.D.3d 463, 464 (NY App. Div. 2019) (same).  This is because, among other things, a hyperlink "does not duplicate the content of a prior publication; rather, it identifies the location of an existing publication and, if selected, instructs a search engine to retrieve that publication." *Doctor's Data, Inc.*, 170 F. Supp. 3d at 1137.  Hyperlinks to the Article—whether by The Times or anyone else—do not constitute "republication" as a matter of law.

### B. Unrelated Third Parties' Publication of the Article or its Contents does not Restart the Statute of Limitations for Claims against The Times

Lokhova next attempts to overcome the statute of limitations by arguing that third parties' quotation or reproduction of the Article or its contents constituted a timely "republication" of the Article.  Lokhova's argument is mistakenly premised on a narrow exception to the single publication rule where the original author may be deemed liable for third parties' republication if republication was a "natural and foreseeable" result or explicitly authorized by the original author.  *See* Compl. ¶ 178 (citing *Weaver v. Home Beneficial Co.*, 199 Va. 196, 200, 98 S.E.2d 687, 690 (Va. 1957) ("[T]he author or originator of a defamation is liable for a republication or repetition thereof by third persons, provided it is the natural and probable consequence of his act, or he has presumptively or actually authorized or directed its republication.").

State and federal courts repeatedly have cautioned that publishers are *not* generally liable for "the independent and unauthorized act of a third party." *See Weaver*, 199 Va. at 199, 98 S.E.2d at 690.  Otherwise, there could be "perpetual liability for a single wrongful act" and the statute of limitations and single publication rules would be rendered meaningless.  *Meyers*, 2005 U.S. Dist. LEXIS 42799, at *75.  *See also Armstrong v. Bank of Am.*, 61 Va. Cir. 131, 132 (Va. Cir. Ct. 2003) ("The rationale underlying the single publication rule . . . is to avoid the

overwhelming multiplicity of lawsuits that could result from defamatory statements contained in mass publications such as newspapers and magazines"); *Oberman v. Dun & Bradstreet, Inc.*, 586 F.2d 1173, 1175 (7th Cir. 1978) (Illinois courts would not hold natural and probable to mean reasonably foreseeable because each republication of a libel constitutes separate cause of action which starts statute of limitations anew, which would result in perpetual liability for single wrongful act).

 As a result, courts applying Virginia law have applied the "natural and probable" exception only when the original speaker knew and intended that a third party would disseminate the speech at issue. For example, in *Blue Ridge Bank v. Veribank*, 866 F.2d 681 (4th Cir. 1988), a financial reporting service provided inaccurate financial information to a syndicated columnist. The Fourth Circuit found that the reporting service reasonably foresaw that the information would become part of the columnist's reporting and intended that the information would be published by those newspapers syndicating the writer's column. Under those narrow circumstances, the statute of limitations was overcome by third party publication of the information at issue.

 Here, in contrast, Lokhova's only basis for applying the *Weaver* exception is that the media defendants published national news stories and therefore "knew or should have known" that others would comment on, retweet, and hyperlink to the stories. *See, e.g.*, Compl. ¶ 181. But if mere publication of a national news story were enough, it would effectively eliminate the single publication rule for major news organizations—the very type of publications the single publication rule was designed to protect. *See Armstrong*, 61 Va. Cir. at 132; *Phila. Newspapers*, 609 F.3d at 175. Accordingly, plaintiff's claims are time-barred and should be dismissed with prejudice.

III.     THE STATEMENTS AT ISSUE ARE NOT ACTIONABLE AS A MATTER OF
         LAW

Even if plaintiff's claims were not barred by the statute of limitations, plaintiff has failed

to identify any actionable statements upon which to state a claim.  The statements lack

defamatory meaning; they represent the non-actionable subjective opinions of two intelligence

sources; and they are not "of and concerning" plaintiff as a matter of law.

### A.   The Statements at Issue Lack Defamatory Meaning

A threshold question of law for the court in every defamation case is whether the

challenged communication is "actionable"; that is, does it reasonably convey a defamatory

meaning.  *Levin v. McPhee*, 119 F.3d 189, 195 (2d Cir. 1997) (citations omitted).  *See also Chau*

*v. Lewis*, 771 F.3d 118, 127 (2d Cir. 2014) ("A statement . . . can meet all of the other elements

of defamation—be factual, published, false, and about the plaintiff—but still not be actionable if

it fails to rise to the necessary level of derogation.").  "Ensuring that defamation suits proceed

only upon statements which actually may defame a plaintiff, rather than those which merely may

inflame a jury to an award of damages, is an essential gatekeeping function of the court." *Webb*

*v. Virginian-Pilot Media Co., LLC*, 287 Va. 84, 90, 752 S.E.2d 808, 811 (Va. 2014).

A statement is defamatory if the words would expose the plaintiff to "hatred, contempt or

aversion, or to induce an evil or unsavory opinion of him in the minds of a substantial number in

the community." *Levin*, 119 F.3d at 195; *Chau*, 771 F.3d at 127.  "To be actionable, therefore,

the statement must do more than cause discomfort or affront; the statement is measured not by

the sensitivities of the maligned, but the critique of reasonable minds that would think the speech

attributes odious or despicable characterizations to its subject." *Chau*, 771 F.3d at 127.  The

defamatory meaning "must be present in the plain and natural meaning of the words" and the

language "must also affirmatively suggest that the author intends or endorses the inference."

11

*Chapin v. Knight-Ridder, Inc.*, 993 F.2d 1087, 1092 (4th Cir. 1993). The words at issue must be read in context, and the challenged publication must be construed as a whole. *See Aronson v. Wiersma*, 483 N.E.2d 1138, 1139 (N.Y. 1985); *Immuno AG. v. Moor-Jankowski*, 567 N.E.2d 1270, 1278 (N.Y. 1991).

Here, the Article stated nothing more than that an unnamed intelligence source was "alarmed" by "apparent closeness" between Flynn and "a Russian woman" and "that concern" led a different intelligence source to warn American authorities that Flynn "could be compromised by Russian intelligence." Compl. ¶ 151; Ex. A. Plaintiff does not allege what specific defamatory meaning should be derived from these words. She generally alleges in the Complaint, however, that the defendants acted in concert with Halper to misrepresent "that Plaintiff was a 'Russian spy' and a traitor to her country and that Plaintiff had an affair with Flynn on the orders of Russian intelligence." Compl. ¶¶ 3-4. 18, 146-47.

That reading is absurd. A source's subjective perception of "apparent closeness" does not reasonably state or imply a sexual relationship, let alone that she betrayed her country, had an extramarital affair, and was acting on the orders of Russian intelligence. The nature of the source's "concern" is unspecified. The "warning" is speculative. And the Article neither adopted nor credited the sources' concerns. Indeed, the overall context of the Article was to report that the informant's activities were highly controversial and under criticism. Under New York law, "[a] publisher is not liable for a defamatory innuendo unless it intended or endorsed that inference." *Chaiken v. VV Publ'g Corp.*, 907 F. Supp. 689, 698 (S.D.N.Y. 1995) (citing *Chapin*, 993 F.2d at 1093. Even if readers would have understood Lokhova to be the unnamed woman in the Article, the statements at issue lack sufficient defamatory meaning to be actionable as a matter of law and on that basis the Complaint should be dismissed with prejudice.

### B. The Statements at Issue are Non-Actionable Opinion

The statements at issue also are not actionable because they are expressions of subjective opinion, incapable of objective proof.  When "a speaker plainly expresses a subjective view, an interpretation, a theory, conjecture, or surmise," rather than claiming "to be in possession of objectively verifiable facts, the statement is not actionable."  *Biospherics, Inc. v. Forbes, Inc.*, 151 F.3d 180, 186 (4th Cir. 1998).  *See also Milkovich v. Lorain Journal Co.*, 497 U.S. 1, 20 (1990) (A statement is not actionable if it "cannot reasonably be interpreted as stating actual facts about an individual.") (internal quotation and citation omitted); *CACI Premier Tech., Inc. v. Rhodes*, 536 F.3d 280, 293-94 (4th Cir. 2008) (same).  Whether an alleged defamatory statement is one of fact or opinion is a question of law properly decided by the Court on a motion to dismiss.  *See, e.g.*, *Levin*, 119 F.3d at 197 (affirming dismissal of defamation action under New York law as non-actionable opinion).  When making this evaluation, courts must consider "the content of the whole communication, its tone and apparent purpose."  *Immuno AG.*, 567 N.E.2d at 1278 (holding that statements of opinion are absolutely privileged under New York law).

The Article recounts two FBI sources' opinions about Flynn's interaction with an unnamed woman: that one was "alarmed by the general's apparent closeness with a Russian woman" and that "[t]he concern was strong enough that it prompted another person to pass on a warning to the American authorities that Mr. Flynn could be compromised by Russian intelligence."  Compl. ¶ 151; Ex. A.  The statements convey the two sources' subjective personal reactions to the interaction between Lokhova and Flynn and conjecture as to its significance.  "When the defendant's statements, read in context, are readily understood as conjecture, hypothesis, or speculation, this signals the reader that what is said is opinion, and not fact."  *Levin*, 119 F.3d at 196-97 (citations omitted).  Lokhova argues that no one should have been

concerned because Lokhova was never close to General Flynn and their interaction was innocuous. Compl. ¶ 154. But this misses the point. What alarms or concerns one person may be innocuous and unremarkable to another—that is the very heart of what defines an opinion.

### C. The Statements at Issue are not "Of and Concerning" Plaintiff as a Matter of Law

To prevail on her defamation claim, plaintiff must show that the allegedly defamatory statements were "of and concerning" her. *See, e.g.*, *Three Amigos SJL Rest., Inc. v. CBS News Inc.*, 65 N.E.3d 35, 37-38 (N.Y. 2016); *see also* 1 Robert D. Sack, *Sack on Defamation* § 2:9.1 (4th ed. 2016) (of and concerning "requirement has constitutional ramifications" (citing *New York Times Co. v. Sullivan*, 376 U.S. 254 (1964))). "Although it is not necessary for the plaintiffs to be named in the publication, they must plead and prove that the statement referred to them and that a person hearing or reading the statement reasonably could have interpreted it as such . . . . This burden is not a light one, and the question of whether an allegedly defamatory statement could reasonably be interpreted to be 'of and concerning' a particular plaintiff is a question of law for the courts to decide." *Three Amigos*, 65 N.E. 3d at 37 (citations omitted). *See also Church of Scientology Int'l v. Behar*, 238 F.3d 168, 173 (2d Cir. 2001) (whether a challenged statement is "of and concerning" the plaintiff "should ordinarily be resolved at the pleading stage").

Here, Lokhova was not named in the article. To meet this element of her claim, therefore, Lokhova must show, first, that readers reasonably would understand the Article to refer to her. Second, Lokhova must show that the statements *about her* were defamatory. *See, e.g.*, *Fornshill v. Ruddy*, No. 95-2490, 1996 U.S. App. LEXIS 14125, at *8 (4th Cir. June 11, 1996) (critical statements at issue were "of and concerning" the *investigation* into suicide of

Deputy White House Counsel, not a police officer mentioned in connection with the investigation).

Lokhova apparently believes that readers would somehow have understood statements about "a Russian woman" and "the seminar" to refer to her, specifically.  Compl. ¶¶ 151-52.  As to the first statement, the Article reported only that "a Russian woman" "was also in attendance" at "the Cambridge Intelligence Seminar."  The Article did not specify that it was at the smaller CIS dinner rather than the larger talk Flynn delivered earlier in the day, did not identify the "woman" as an academic or a member of Cambridge University rather than a member of the public or a guest of Flynn, and provided no other identifying details—age, appearance, conduct, profession, etc.—by which to identify the woman.  In addition, Lokhova's Complaint repeatedly asserts that although she was born in Russia, she is a British citizen and should be referred to as such, undermining her argument that readers necessarily would have understood her to be "a Russian woman."  *See, e.g.* Compl. ¶ 11 (stating that plaintiff was born in Russia but is a UK citizen; the Complaint is silent as to whether she retains Russian citizenship); ¶ 106 ("The [a]rticle falsely stated that Lokhova was a "foreign stranger". She was a citizen of the UK."); ¶ 132 (plaintiff stating "I am a British author and historian.").  Given the paucity of information in the Article, a reasonable reader of the Article would not have drawn the inference that "a Russian woman" referred to the specific Cambridge academic Svetlana Lokhova.

As to the second statement, regarding "the seminar," the Article did not assert that *Lokhova* was the source of Kremlin influence and the Article's hyperlink to the FT Article specifically rebuts such an implication.  As the FT article made clear, the organizer were concerned about an outside company named Veruscript that provided funding and logistical support to the seminar—not Lokhova or any other academic involved with CIS.  *See* Ex. B.  No

reasonable reader would understand the Article's brief reference to the seminar controversy as defamatory statements about Lokhova.

## IV.    PLAINTIFF'S REMAINING CLAIMS ALSO SHOULD BE DISMISSED

Lokhova's remaining claims for common law conspiracy and tortious interference are based on The Times' publication of the Article.  Because her defamation claim fails, these claims also fail.  As courts repeatedly have held, plaintiffs may not evade constitutional protections by recasting their defamation as different theories of tort.  *See, e.g.*, *Hustler v. Magazine, Inc. v. Falwell*, 485 U.S. 46, 51-56 (1988) (plaintiff cannot evade First Amendment protections against defamation claims by pleading another tort); *Food Lion, Inc. v. Capital Cities/ABC, Inc.*, 194 F.3d 505, 522 (4th Cir. 1999) (claimants cannot "recover defamation–type damages under non-reputational tort claims, without satisfying the stricter (First Amendment) standards of a defamation claim.  We believe that such an end-run around First Amendment strictures is foreclosed by *Hustler*."); *Tierney v. Vahle*, 304 F.3d 734, 743 (7th Cir. 2002) ("To evade the constitutional limitations on defamation suits by charging the alleged defamer with participation in a conspiracy, which is to say just by relabeling the tort, cannot be permitted."); *Krepps v. Reiner*, 588 F. Supp. 2d 471, 485 (S.D.N.Y. 2008) ("Plaintiff is not permitted to dress up a defamation claim as a claim for intentional interference with a prospective economic advantage."), *aff'd on other grounds*, 377 F. App'x 65 (2d Cir. 2010).

Courts also have rejected attempts to circumvent the statute of limitations for defamation by characterizing the claim as other torts.  *See Lesesne v. Brimecome*, 918 F. Supp. 2d 221, 229 (S.D.N.Y. 2013).  "[A] contrary result might very well enable plaintiffs in libel and slander cases to circumvent the otherwise short limitations period for defamation claims."  *Id.* at 224 (quotation and citation omitted).

16

Plaintiff's conspiracy and tortious interference claims also fail on the merits.  As to her conspiracy claim, New York "does not recognize a freestanding claim for conspiracy." *Carlson v. Am. Int'l Grp., Inc.*, 89 N.E.3d 490, 504 (N.Y. 2017).  Even if it did—or if Virginia law applied—plaintiff makes only conclusory allegations that The Times conspired with Halper, untethered to any facts that would plausibly support such a claim.  *See* Compl. ¶ 183; *Flexible Benefits Council v. Feltman*, No. 08-371, 2008 U.S. Dist. LEXIS 46626, at *26 (E.D. Va. June 16, 2008) (setting out the elements of common law conspiracy).  Plaintiff also fails adequately to plead *any* of the elements of tortious interference: the existence of a valid contract, The Times' knowledge of the contract, The Times's intent to interfere, or how the Article actually disrupted her business relationships.  *See, e.g.*, *Lama Holding Co. v. Smith Barney*, 668 N.E.2d 1370, 1375 (1996) (setting out the elements of tortious interference with contract under New York law: the elements under Virginia law are substantially the same.  *See, e.g. Duggin v. Adams*, 360 S.E.2d 832, 835 (Va. 1987)).  Plaintiff's claims for conspiracy and tortious interference are foreclosed by First Amendment protections and independently fail on the merits and must also be dismissed with prejudice.

# CONCLUSION

For the foregoing reasons, Defendant The Times respectfully requests that its motion to dismiss be granted and the Complaint be dismissed, with prejudice.

Date:  August 8, 2019

Respectfully Submitted,
**THE NEW YORK TIMES COMPANY**,
*By Counsel*

*/s/ Alexander R. Green*
John Hundley (VSB No. 36166)
Alexander R. Green (VSB No. 83937)
LECLAIRRYAN PLLC
2318 Mill Road, Suite 1100
Alexandria, Virginia 22314
Tel: 703-647-5976
Fax: 703-647-5988
Email: alexander.green@leclairryan.com

Dana R. Green (admitted *pro hac vice*)
The New York Times Company
Legal Department
620 8th Avenue
New York, NY 10018
Tel: 212-556-5290
Fax: 212-556-4634
Email: dana.green@nytimes.com

*Counsel for The New York Times Company*

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on this 8th day of August, 2019, the foregoing document was filed via the CM/ECF system, which will send out a notification of filing thereof to all counsel of record in this matter.

> /s/ Alexander R. Green
> Alexander R. Green (VSB No. 83937)
> LECLAIRRYAN PLLC
> 2318 Mill Road, Suite 1100
> Alexandria, Virginia 22314
> Tel: 703-647-5976
> Fax: 703-647-5988
> Email: alexander.green@leclairryan.com
>
> *Counsel for The New York Times Company*