IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
Alexandria Division

| | |
|---|---|
| SVETLANA LOKHOVA ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | Civil Action No. 1:19-cv-632-TSE |
| ) | |
| ) | |
| STEFAN A. HALPER, ) | |
| et al ) | |
| ) | |
| Defendants. ) | |
| ) | |

# PLAINTIFF'S MEMORANDUM IN OPPOSITION TO DEFENDANT HALPER'S MOTION FOR SANCTIONS

Plaintiff, Svetlana Lokhova, by counsel, pursuant to Local Civil Rule 7(F) and the Court's Order [*ECF No. 51*], respectfully submits her Memorandum in Opposition to the motion for sanctions [*ECF No. 35*] filed by defendant, Stefan A. Halper ("Halper"):

**I. PLAINTIFF'S GOOD FAITH ALLEGATIONS ARE 100% ACCURATE**

Threats.  Bullying.  Intimidation.  These tactics may have a place in the clandestine and opaque world of campaign-intelligence operations.  They have no place in Federal Court.

To be clear, Halper is not a "victim".  He is the perpetrator, and he destroyed Plaintiff's good name and reputation by publishing false and defamatory statements about her to multiple media outlets.

1

Plaintiff commenced this action against Halper in good faith after Halper was exposed as the source of the defamatory statements published about Plaintiff and General Michael Flynn in 2017 and 2018 in the Wall Street Journal, the New York Times, the Washington Post, on MSNBC, on Twitter, Facebook and elsewhere – statements that were republished many times in 2019.  Halper's nefarious past and dirty tricks are a matter of public record, archived in the permanent annals of the Gray Lady, UPI, and in several published books. [*See, e.g.*, https://www.nytimes.com/1983/07/07/us/reagan-aides-describe-operation-to-gather-inside-data-on-carter.html ("An operation to collect inside information on Carter Administration foreign policy was run in Ronald Reagan's campaign headquarters in the 1980 Presidential campaign … The sources identified Stefan A. Halper, a campaign aide involved in providing 24-hour news updates and policy ideas to the traveling Reagan party, as the person in charge"); https://www.nytimes.com/1984/04/07/us/questions-remain-about-activities-of-aides-to-the-1980-reagan-campaign.html?searchResultPosition=25 ("Nine months after the disclosure that some of President Carter's briefing papers ended up in the hands of the Reagan campaign in 1980, it has become clear that Reagan aides took great pains to get information about the opposite camp.  But, despite several investigations, questions remain.  One is whether any of the wide-ranging efforts by Reagan officials to obtain information were illegal.  Another is how the Reagan campaign obtained the confidential debate briefing papers.  A third is which, if any, of President Reagan's top appointees have misled investigators."); Roger Stone and Saint John Hunt, *The Bush Crime Family*, Chap. 23 (Simon & Shuster 2017) ("Halper was in charge of Bush's 'research' (dirty tricks) staff"); Patricia Goldstone, *Interlock. Art, Conspiracy, and the Shadow Worlds of*

*Mark Lombardi*, p. 120 (Catapult 2015) (Halper was a co-founder and chairman of Palmer National Bank ("PNB") from 1983 to 1990. PNB was the "DC hub by which Lt. Col. Oliver North sent arms and money to the anti-Sandinista guerrilla Contras in Nicaragua … An accomplished political operative, Halper was later linked to several … dirtier-tricks"). Paragraph 1 of Plaintiff's complaint accurately describes Halper and his decades-long career as a political operative.[1]

Halper's role in 2016 as a spy or informant for the FBI is also common knowledge. On May 8, 2018, the Washington Post published an article about a "secret intelligence source" who had allegedly provided information to special counsel Robert Mueller. The Post described the source as "a U.S. citizen who has provided intelligence to the CIA and FBI". https://www.washingtonpost.com/politics/risk-to-intelligence-source-who-aided-russia-investigation-at-center-of-latest-showdown-between-nunes-and-justice-dept/2018/05/08/d6fb66f8-5223-11e8-abd8-265bd07a9859_story.html]. On May 16, 2018, the New York Times published an article in which it revealed that "current and former government officials" told the newspaper that "at least one government informant" met several times in 2016 with Trump campaign advisors Carter Page and George Papadopoulos." [https://www.nytimes.com/2018/05/16/us/politics/crossfire-hurricane-trump-russia-fbi-mueller-investigation.html ("**Code Named Crossfire**

---

[1] [http://daveweigel.com/2010/06/on-ratfucking/ (the literal meaning of the word "ratfuck" is "using false pretenses to nail a political opponent"); https://en.wikipedia.org/wiki/Ratfucking ("Ratfucking is an American slang term for political sabotage or dirty tricks. It was brought to public attention by Bob Woodward and Carl Bernstein in their non-fiction book *All the President's Men* (1974); https://www.politico.com/magazine/story/2019/01/25/roger-stone-and-rating-a-short-history-224218 ("Surprisingly enough, the history of "ratfucking" as a political term of art for sleazy maneuvers goes back nearly a century")].

3

**Hurricane: The Secret Origins of the Trump Investigation**")]. On May 17, 2018, the *Daily Caller* published an article specifically naming Halper, describing Halper's extensive contacts in 2016 with Mr. Page and Mr. Papadopoulos, and questioning whether Halper was indeed the "government informant" identified by the Times. https://dailycaller.com/2018/05/17/halper-trump-page-papadopoulos/ ("Whoever the source turns out to be, the fact that the FBI had an informant spying on the Trump campaign is likely to generate bitter partisan debate.")]. On May 19, 2018 – a day after publication of the NYT Article at issue in this action – the *Intercept* revealed that Halper was, in fact, an informant used by the FBI in 2016 to "gather information", *i.e.*, spy, on the Trump campaign. The *Intercept* described Halper as a "long-time, highly sketchy, CIA operative … Halper's history is quite troubling". The *Intercept* reported that:

> "So as it turns out, the informant used by the FBI in 2016 to gather information on the Trump campaign was not some previously unknown, top-secret asset whose exposure as an operative could jeopardize lives. Quite the contrary: his decades of work for the CIA – including his role in an obviously unethical if not criminal spying operation during the 1980 presidential campaign – is quite publicly known."

[https://theintercept.com/2018/05/19/the-fbi-informant-who-monitored-the-trump-campaign-stefan-halper-oversaw-a-cia-spying-operation-in-the-1980-presidential-election/]. The allegations in Plaintiff's complaint about Halper's role as an FBI informant are 100% accurate and confirmed.

Finally, Halper's statements to the Journal, Times and Post and the coordinated nature of the attacks on Plaintiff and General Flynn are detailed in Plaintiff's complaint. The complaint describes Halper's motive and his methods. Halper ignores the evidence and ignores the many witnesses forecast by Plaintiff. He claims in a conclusory manner that Plaintiff's defamation claims are "meritless".

## II. HALPER'S MOTION CONTAINS NUMEROUS MISSTATEMENTS

Halper's motion contains numerous misstatements, half-truths and errors, including the following:

- "Plaintiff immediately promoted the broad dissemination of this vulgar and degrading accusation by linking the Complaint on his Court's website to her promotional (Go Fund Me) website seeking contributions ostensibly to pay for the prosecution of her claims against Defendant. *See* https://www.gofundme.com/f/supportsvetlanalokhova".
  [*Halper Memorandum in Support of Motion (ECF No. 36) ("Halper Memo"), p. 2*]

  Halper objects to one word in Plaintiff's complaint. That one word happens to be truthful. It is well-documented that Halper engages in political sabotage and dirty tricks. Books have been written about it.

  It is ***not*** used as an "expletive". It was ***not*** intended to "degrade" Halper or to "aggrandize Plaintiff and her counsel, for their mutual profit." These statements are without any evidentiary support because they are completely baseless and unsupportable.

  The complaint is a matter of public record. If he was truly concerned about the word "Ratf***er", Halper could have availed himself of any number of remedies to address the perceived injustice. He chose ***not*** to file a motion to seal or to redact or strike any portion of Plaintiff's complaint.

  His counsel made no effort to contact Plaintiff's counsel prior to filing the instant motion for sanctions to address any issues.

  In truth, Halper's actions crippled Plaintiff economically. She was forced to set up a GoFundMe page on June 12, 2019 to raise funds for legal and other expenses in the case. She has raised a mere $2,295.

- "The only apparent purpose of this vulgar accusation is to convert this lawsuit (and this Court) into a source of publicity and notoriety for Plaintiff and her counsel. Plaintiff and her counsel are using this Court's docket to host this outrageous invective for their own profit and fame beyond this Courthouse."
  [*Halper Memo, p. 2*].

This is nothing more than unsubstantiated hyperbole.

The purpose of all the allegations against Halper is to describe Halper's background, what he does, what he was doing when he published his false and defamatory statements to the Journal, Times, Post and others, and the harm he caused by his actions.

Halper destroyed Plaintiff's reputation and her livelihood. Plaintiff filed this action for two purposes only: to clear her name and to recover for the presumed and actual damages inflicted upon her by the Defendants.

- "The particular mechanism chosen to accomplish this improper object—the embedding of the "Ratf***er" accusation in a filed complaint, which Plaintiff then linked to her internet Go Fund Me website to market this accusation to a global audience—is a transparent effort to shield the broadcasting of this outrageous charge from liability through the privilege applied to federal pleadings filed in good faith … This is not good faith litigation conduct. This ploy reflects the perspective of a lawyer versus that of a layperson."
[*Halper Memo, p. 3*][2]

There is no "ploy" here. No one is marketing anything to anyone.

The suggestion that Plaintiff's counsel had ***anything*** whatsoever to do with setting up the GoFundMe page is sanctionable. It is without any evidentiary support, and it is levelled for the improper purpose of casting baseless aspersions on Plaintiff and her counsel.

- Plaintiff has "conscript[ed] this Court, and its necessary docketing practices, into a protected hosting platform for the broad dissemination of such gratuitous vile accusations over the internet for their gain."
[*Halper Memo, p. 3*]

Halper's scandalous, impertinent and repetitive conclusory statements should be rejected. Plaintiff properly commenced this legal action for a proper purpose in the correct forum.

The Court's docket is not a political blog, and Halper's counsel should not be using it as such.

---

[2] On page 3 of his memorandum in support, Halper cites the following case: "*See Spencer v. American Int'l Grp., Inc.*, 2009 WL 47111, *5 (E.D. Va. Jan. 6, 2009) (citing *Donohoe Constr. Co. v. Mount Vernon Assocs.*, 235 Va. 531, 537 (1988))." The citation is wrong and does not support the proposition for which it apparently is offered.

6

- The "*raison d'etre* of the suit is the propagation of Plaintiff's invective for the ulterior purpose of promoting her critique of an FBI investigation". [*Halper Memo, p. 3*]

    Rather than accept blame for the harm he has done to Plaintiff and to General Flynn, Halper attempts to deflect the blame from himself, to speak for Plaintiff, and to manufacture a *raison d'etre* for this lawsuit.

    Halper is a long-time, sketchy, CIA/FBI operative who has engaged in multiple counter-intelligence operations over four decades.

    Plaintiff and her counsel will not be intimidated.

### III.  PRINCIPLES OF LAW AND ARGUMENT

The District Court possesses "the inherent authority in appropriate cases to assess attorneys' fees and impose other sanctions against a litigant or a member of the bar who has 'acted in bad faith, vexatiously, wantonly, and for oppressive reasons.'" *Williams v. Family Dollar Servs., Inc.,* 327 F.Supp.2d 582, 585 (E.D. Va. 2004) (quoting *Chambers v. NASCO, Inc.,* 501 U.S. 32, 45–46 (1991)).  The District Court's inherent power allows the Court to sanction attorneys who inhibit courts' ability "to manage their own affairs." *Royal Ins. v. Lynnhaven Marine Boatel, Inc.,* 216 F.Supp.2d 562, 567 (E.D. Va. 2002). The power "ought to be exercised with great caution," in circumstances such as those involving "the very temple of justice [being] defiled." *Id.* (citations omitted).

Neither Plaintiff nor her counsel has done anything in this case to warrant sanctions.

**A.**  *Good Faith Allegations of Defamation*

On August 29, 2019, Plaintiff filed an amended complaint. [*ECF No. 52*].  In her amended complaint, Plaintiff alleges that Halper and his co-conspirators published the following false and defamatory statements:

7

- Plaintiff was part of a "Kremlin-backed operation to compromise the group" and Halper stepped down due to "unacceptable Russian influence on the group".
  [*Amended Complaint, ¶¶ 84-86*]

- Plaintiff was a Russian spy.
  [*Amended Complaint, ¶¶ 4, 89*]

- General Flynn asked Plaintiff to travel with him as a translator to Moscow on his next official visit and General Flynn signed an email to Plaintiff as "General Misha".
  [*Amended Complaint, ¶¶ 93, 95, 98, 100*]

- Lokhova and Flynn had an affair.
  [*Amended Complaint, ¶¶ 4, 102, 104*]

- Halper was a source of the WSJ Article, which contains multiple false and defamatory statements.
  [*Amended Complaint, ¶¶ 110-112, 114*]

- Halper was a source of the Guardian Article, which contains multiple false and defamatory statements.
  [*Amended Complaint, ¶¶ 129-123, 130*]

- Halper was a source of the Mail and Telegraph Articles, which contain multiple false and defamatory statements.
  [*Amended Complaint, ¶¶ 126-128*]

- The New York Times blindly republished false statements by Halper.[3]
  [*Amended Complaint, ¶¶ 157-158, 161*]

---

[3] On page 4 of his memorandum in support, Halper states that "Plaintiff was told the obvious before filing this suit—the New York Times coverage of her never claimed she was a Russian spy. Despite this, Plaintiff then filed this lawsuit claiming that the New York Times did so with Halper as its source. Complaint, ¶ 150." Contrary to Halper's suggestion, ¶ 150 of Plaintiff's complaint states as follows:

> "Although the Times did not mention Halper by name in the NYT Article, Halper was the 'Informant' identified in the headline and the 'source' referenced throughout the story."

This is a 100% true statement.

8

- Halper was a source of Brennan's statements to Congress, which contain multiple false and defamatory statements.
  [*Amended Complaint, ¶¶ 146-147*]

- Halper was a source of the Post Article, which contain multiple false and defamatory statements.
  [*Amended Complaint, ¶¶ 166, 170-171*].

Plaintiff's knowledge and good faith belief that Halper was the source is based upon direct statements from witnesses, the timing of the various articles, the substance of the statements in the various articles, who the reporters are, *i.e., Costa was Halper's student and Goldman, Rosenberg and Harris, like Halper, are long-time sources for the FBI*, and unequivocal statements made by Goldman and Costa to MSNBC. [*See, e.g., Amended Complaint, ¶¶ 89, 105, 107, 111, 121, 127, 158, 162, 164*].

B.  *Statute of Limitations – The Republication Rule*

It has long been stated that "[t]alebearers are as bad as talemakers". *Harris v. Minvielle*, 19 So. 935, 928 (La. Ct. App. 1896).

Virginia follows the "republication rule". Under the republication rule, "one who repeats a defamatory statement is as liable as the original defamer." *Reuber v. Good Chemical News, Inc.*, 925 F.2d 703, 712 (4th Cir. 1991), *cert. denied*, 111 S.Ct. 2814 (1991); *Lee v. Dong-A Ilbo*, 849 F.2d 876, 878 (4th Cir. 1988) (same); *see also Dragulescu v. Va. Union Univ.*, 223 F.Supp.3d 499, 509 (E.D. Va. 2016) ("[E]ach successive publication of an old or preexisting defamatory statement gives rise to a new cause of action under Virginia law."); *Eramo v. Rolling Stone, LLC*, 209 F. Supp.3d 862, 872 (W.D. Va. 2016) ("'[r]epetition of another's words does not release one of responsibility if the repeater knows that the words are false or inherently improbable, or there are obvious reasons to doubt the veracity of the person quoted.'") (quoting

*Goldwater v. Ginzburg*, 414 F.2d 324, 337 (2nd Cir. 1969), *cert. denied*, 396 U.S. 1049 (1970)); *WJLA-TV v. Levin*, 264 Va. 140, 153, 564 S.E.2d 383 (2002) ("each publication of a defamatory statement is a separate tort and, indeed, generally subsequent republications of such a statement are separate torts"); *id. Olinger v. American Savings and Loan Ass'n*, 409 F.2d 142, 144 (D.C. Cir. 1969) ("The law affords no protection to those who couch their libel in the form of reports or repetition … [T]he repeater cannot defend on the ground of truth simply by proving that the source named did, in fact, utter the statement."). Republication occurs when the original defamatory statement is "affirmatively reiterated" or redistributed to a new audience. *Eramo v. Rolling Stone, LLC*, 2016 WL 5234688, at * 11 (W.D. Va. 2016) (citing *Clark v. Viacom Int'l, Inc.*, 617 Fed.Appx. 495, 505 (6th Cir. 2015) and *In re Davis*, 347 B.R. 607, 611 (W.D. Ky. 2006)); *id. Gilmore v. Jones*, 370 F.Supp.3d 630, 658 fn. 30 (W.D. Va. 2019) (article and video published on the website www.infowars.com was republished by Alex Jones on his YouTube channel); *League of United Latin American Citizens – Richmond Region Council 4614 v. Public Interest Legal Foundation*, 2018 WL 3848404, at * 7 (E.D. Va. 2018) ("Defendants fail to rebut Plaintiffs' assertion that *Alien Invasion II* is effectively a successive publication of an old or preexisting defamatory statement (i.e., *Alien Invasion I*). Given the textual, thematic, and formalistic parallels between the two publications, the Court finds that *Alien Invasion II* qualifies as a 'republication' for purposes of Plaintiffs' defamation claim. Accordingly, the limitations period does not bar Plaintiffs' action with respect to either report."); *Doe v. Roe*, 295 F.Supp.3d 664, 671 (E.D. Va. 2018) ("where there are separate publications of the same defamatory statement, a new cause of action, and thus a new statute of limitations, accrues with each republication").

The leading case in Virginia on republication is *Weaver v. Beneficial Finance Co.*, 199 Va. 196, 98 S.E.2d 687 (1957). In *Weaver*, the defendants wrote a libelous letter about the plaintiff, and published the letter to plaintiff's employer. The letter was later republished to the company's promotion board. In his complaint, the plaintiff alleged

> "that the libelous letter in question was republished on or about March 21, 1956 before a promotion board convened to consider appellant's record, at which time the contents of the letter were first made known to appellant; that the letter suggested that appellant was and is dishonest, insolvent and one to whom credit should not be extended; that it attacked his reputation for integrity; that appellees knew the libelous letter would be a permanent part of his record and would be republished in the future; that the republication of the letter was the natural and probable consequence of the appellees' act … Appellant's cause of action is grounded upon the republication of the letter, on March 21, 1956."

199 Va. at 198, 98 S.E.2d at 690. The trial court sustained a plea of the statute of limitations and dismissed plaintiff's complaint. The Supreme Court reversed:

> "It is well settled that the author or originator of a defamation is liable for a republication or repetition thereof by third persons, provided it is the natural and probable consequence of his act, or he has presumptively or actually authorized or directed its republication. This is based upon the principle that such republication constitutes a new cause of action against the original author. However, the original author is not responsible if the republication or repetition is not the natural and probable consequence of his act, but is the independent and unauthorized act of a third party.
> …
>
> "'Under the weight of authority the author of a libel or slander is not liable for its voluntary and unjustifiable repetition, without his authority or request, by others over whom he has no control, either as on a direct cause of action or by way of aggravation of damages, and such repetition cannot be considered in law a necessary, natural and probable consequence of the original slander or libel. But the rule has one important qualification. It is a general principle that every one is responsible for the necessary consequences of his act, and it may be that the repetition of a slander or libel may be the natural consequence of the original publication, in which case the author of the original defamatory matter would be liable. **And where the words declared on are slanderous per se their repetition by others is the natural and probable result of the original slander**.'"

11

199 Va. at 199-200, 98 S.E.2d at 690 (emphasis added); *Moore v. Allied Chemical Corp.*, 480 F.Supp. 364, 376 (E.D. Va. 1979) ("Count V is not time-barred insofar as plaintiff seeks to hold Allied liable for republications of the allegedly defamatory statement occurring on or after July 1, 1976. If he can show that the statement was defamatory, he may be able to show that the republications of the statement were the natural and probable result of the original publication.").

The statute of limitations is an affirmative defense that must be raised or it is waived. Halper has raised the defense of the statute of limitations in his motion to dismiss. As alleged in Plaintiff's complaint, this case is based upon Defendants' publications and republications within the year prior to commencement of this action. [*Amended Complaint, ¶¶ 5, 20, 87, 122, 163, 172*]. The assertion of Plaintiff's timely claims could in no way be sanctionable. The fact that one or more of Plaintiff's claims[4] *may* be ultimately dismissed does not mean that the assertion of the underlying facts is sanctionable.

1. *Evidence of Actual Malice*

Even as to those actionable statements by Halper that are beyond the one-year statute of limitations, the defamatory statements are relevant to show malice.

---

[4] Halper agrees, as he must, that Plaintiff's claim for tortious interference is timely. *Dunlap v. Cottman Transmission Systems, LLC*, 287 Va. 207, 219-222, 754 S.E.2d 313 (2014) ("one of the elements of a claim for tortious interference with either a contract or business expectancy requires intentional interference inducing or causing a breach or termination of the contractual relationship or business expectancy. Such interference is directed at and injures a property right, i.e., the right to performance of a contract and to reap profits and benefits not only from the contract but also from expected future contracts or otherwise advantageous business relationships … Therefore, we hold that the five-year statute of limitations in Code § 8.01-243(B) applies to both tortious interference with contract and tortious interference with business expectancy.") (citations omitted).

In *Williams Printing Co. v. Saunders*, 113 Va. 156, 73 S.E. 472 (1912), the Virginia Supreme Court squarely ruled as follows:

> "Any other words written or spoken by the defendant of the plaintiff, either before or after those sued on, or even after the commencement of the action, are admissible to show the animus of the defendant, and for this purpose **it makes no difference whether the words tendered in evidence are themselves actionable or not**, or whether they be addressed to the same party or to some one else. Such other words need not be connected with or refer to the defamatory matter sued on, provided they in any way tend to show malice in the defendant's mind at the time of publication. And not only are such other words admissible in evidence, but also the circumstances attending the publication, the mode or extent of their repetition. The more the evidence approaches proof of a systematic practice of libeling or slandering the plaintiff, the more convincing it will be."
> …
>
> "The jury no doubt should be told, whenever the other words so tendered in evidence are in themselves actionable, that they must not give damages in respect of such other words, because they might be the subject-matter of a separate action; but the omission by the judge to give such a caution will not amount to a misdirection. But the defendant is always at liberty to prove the truth of such other words so given in evidence, for he could not plead a justification as to them, as they were not set out on the record."
> …
>
> "It must be remembered ... that this evidence of former or subsequent defamation is only admissible to determine quo animo the words sued on were published; that is, they are only admissible when *malice in fact* is in issue. If there is no question of malice, no such other libels would be admissible, unless they had immediate reference to the libel sued on; and even then it would be better that they should be set out in the statement of claim. And it is now clear law that, whenever the question of malice or bona fides is properly about to be left to the jury, evidence of any previous or subsequent libel is admissible, **even though it be more than six years prior to the libel sued on**, and even though a former action has been brought for the libel now tendered in evidence, and damages recovered therefor. The law is the same in America."

73 S.E. at 474 (quotations and citations omitted) (emphasis added).

In *Snyder v. Fatherly*, the Supreme Court likewise emphasized:

> "However questionable the practice may seem, to permit the introduction of evidence of words spoken at a different time, in order to prove malice in speaking those charged in the declaration, it seems now to be too firmly established to be shaken."

13

…

"As a general rule it is considered competent for the plaintiff to show, as evidence of malice, that since the speaking or publication of the slander or libel which is the subject of the action, the defendant has repeated or republished the same, even though such repetition or republication has taken place since the commencement of the action, and the operation of this rule is not confined merely to a repetition or republication of the same words as those which are the basis of the action, but extends to the speaking or publication of words having the same import or conveying the same charge."

158 Va. at 354, 163 S.E. 358 at 365 (quotations and citations omitted).

## **CONCLUSION**

Halper's request for sanctions is outrageous. Here, there has been no sanctionable conduct. None of the cases cited by Halper's counsel even remotely fits the facts of this case. Halper's counsel could not possibly believe that suspension of Plaintiff's counsel's privilege to practice before the Court is an appropriate sanction. The case Halper cites is A*llen v. Fitzgerald for Region Four*. That case is wholly inapposite and inapplicable.

For the reasons stated above and at the hearing of this matter, Plaintiff requests the Court to deny Halper's motion for sanctions.

DATED: May 23, 2019

SVETLANA LOKHOVA

By: */s/ Steven S. Biss*
Steven S. Biss (VSB # 32972)
300 West Main Street, Suite 102
Charlottesville, Virginia 22903
Telephone: (804) 501-8272
Facsimile: (202) 318-4098
Email: **stevenbiss@earthlink.net**

*Counsel for Plaintiff, Svetlana Lokhova*

14

**CERTIFICATE OF SERVICE**

I hereby certify that on August 30, 2019 a copy of the foregoing was filed electronically using the Court's CM/ECF system, which will send notice of electronic filing to counsel for the Defendants and all interested parties receiving notices via CM/ECF.

By: */s/Steven S. Biss*
Steven S. Biss (VSB # 32972)
300 West Main Street, Suite 102
Charlottesville, Virginia 22903
Telephone: (804) 501-8272
Facsimile: (202) 318-4098
Email: **stevenbiss@earthlink.net**

*Counsel for Plaintiff, Svetlana Lokhova*