UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF VIRGINIA
Alexandria Division

SVETLANA LOKHOVA,                          )
                                           )
            Plaintiff,                     )
                                           )
v.                                         )        Case No.:  1:19-cv-000632-TSE-JFA
                                           )
STEFAN A. HALPER,                          )
DOW JONES & COMPANY, INC.,                 )
THE NEW YORK TIMES COMPANY,                )
WP COMPANY, LLC,                           )
NBCUNIVERSAL MEDIA, LLC, and               )
MALCOLM NANCE,                             )
                                           )
            Defendants.                    )
_____    )

**DEFENDANT WP COMPANY LLC'S REPLY MEMORANDUM IN FURTHER
SUPPORT OF MOTION TO DISMISS PLAINTIFF'S AMENDED COMPLAINT**

Patrick J. Curran Jr. (VA Bar No. 86144)
Laura Handman (admitted *pro hac vice*)
Eric J. Feder (*admitted pro hac vice*)
DAVIS WRIGHT TREMAINE LLP
1919 Pennsylvania Avenue, N.W., Suite 800
Washington, DC  20006
Ph: 202-973-4200; Fax: 202-973-4499
patcurran@dwt.com
laurahandman@dwt.com
ericfeder@dwt.com

*Counsel for Defendant WP Company LLC*

# TABLE OF CONTENTS

**Page**

I.    PRELIMINARY STATEMENT ......................................................................... 1

II.    ARGUMENT ..................................................................................................... 2

    A.    Plaintiff Does Not Even Attempt to Show That the Post Published a
Defamatory Statement of Fact About Her .......................................................... 2

    B.    Plaintiff's Bare Allegations of the Elements of Actual Malice Cannot
Overcome the Protections of Virginia's Immunity Statute................................... 6

    C.    Plaintiff Has Effectively Abandoned Her Tortious Interference Claim
Against the Post ................................................................................................. 9

    D.    Plaintiff's Conspiracy Claim Is Wholly Implausible........................................... 10

III.    CONCLUSION.............................................................................................. 12

# TABLE OF AUTHORITIES

**Page(s)**

**Federal Cases**

*Bell Atl. Corp. v. Twombly*,
   550 U.S. 544 (2007) ................................................................................................7, 10, 11

*Biro v. Condé Nast*,
   807 F.3d 541 (2d Cir. 2015) .....................................................................................6

*Deripaska v. Associated Press*,
   282 F. Supp. 3d 133 (D.D.C. 2017) .........................................................................6

*Fairbanks v. Roller*,
   314 F. Supp. 3d 85 (D.D.C. 2018) ...........................................................................6

*Ferdinand–Davenport v. Children's Guild*,
   742 F. Supp. 2d 772 (D. Md. 2010) .......................................................................10

*Firestone v. Wiley*,
   485 F. Supp. 2d 694 (E.D. Va. 2007) ....................................................................10

*Greer v. Petersburg Bureau of Police*,
   2017 WL 1427246 (E.D. Va. Apr. 19, 2017) ...........................................................6

*Harsy v. Mid Am. Apartment Cmtys., Inc.,,*
   2017 WL 2728034 (E.D. Va. June 22, 2017) ........................................................12

*Harte-Hanks Commc'ns, Inc. v. Connaughton*,
   491 U.S. 657 (1989) .................................................................................................9

*Kahl v. Bureau of Nat'l Affairs*,
   856 F.3d 106 (D.C. Cir. 2017) .................................................................................7

*Masson v. New Yorker Magazine, Inc.*,
   501 U.S. 496 (1991) .................................................................................................9

*Mayfield v. NASCAR, Inc.*,
   674 F.3d 369 (4th Cir. 2012) ................................................................................6, 7

*McFarlane v. Sheridan Square Press, Inc.*,
   91 F.3d 1501 (D.C. Cir. 1996) .................................................................................8

*Steele v. Goodman*,
   382 F. Supp. 3d 403 (E.D. Va. 2019) ....................................................................11

*Va. Citizens Def. League v. Couric*,
    910 F.3d 780 (4th Cir. 2018) ................................................................3

*Wood v. Southside Physician Network, LLC*,
    2019 WL 3416665 (E.D. Va. July 29, 2019) ..........................................12

**State Cases**

*Gazette, Inc. v. Harris*,
    229 Va. 1 (1985) .................................................................................5

*Hyland v. Raytheon Tech. Servs. Co.*,
    277 Va. 40 (2009) ...............................................................................5

*Webb v. Virginian-Pilot Media Companies*,
    287 Va. 84 (2014) ...............................................................................3

**State Statutes**

Virginia Code
    § 8.01-223.2(A)...................................................................................6
    § 8.01-223.2(B)................................................................................2, 12

**Rules**

Federal Rule of Civil Procedure 12(b)(6) .....................................................6

Defendant WP Company LLC d/b/a The Washington Post[1]  respectfully submits this reply memorandum in further support of its motion to dismiss the Amended Complaint against the Post (the "Motion").

## I.   PRELIMINARY STATEMENT

Plaintiff's opposition briefs[2] confirm the complete lack of merit in her claims against the Post.  Plaintiff pads her briefs with exhaustive rehashing of the sprawling allegations of her Amended Complaint and block quotes from the applicable case law, but when it comes time to actually respond to the *substance* of the specific arguments the Post made in its Motion to Dismiss, she comes up egregiously short.  Indeed, she scarcely addresses the numerous, independently sufficient bases for dismissal of her claims against the Post, instead doubling down on her elaborate—and utterly implausible—theory of a conspiracy to defame her among Defendant Halper, various government agencies, and major media outlets around the world.

Ultimately, whatever grievances Plaintiff may have against her former colleagues at Cambridge—or against various anonymous individuals posting about her on social media—she has absolutely no legal claim against the Post.  Plaintiff already amended her complaint once— after review of defendants' initial motions to dismiss—but still fails to state a claim as a matter of law against the Post.  Amendment would be futile and the Amended Complaint thus should be dismissed with prejudice.  Because Plaintiff has not plausibly alleged that the Post published any

---

[1] Capitalized terms bear the same definitions as in the Post's memorandum of law in support of its motion to dismiss (ECF No. 69) ("Post Mem.").

[2] Plaintiff's arguments in opposition to the motions to dismiss the Amended Complaint are set forth in both her opposition to the motion to dismiss of Defendant Stefan Halper (ECF No. 74) ("Halper Opp.") and her combined opposition to the motion to dismiss of the "Media Defendants" (which Plaintiff defines as including defendants Dow Jones & Company, Inc., The New York Times Company, NBCUniversal Media, LLC and the Post) (ECF No. 75) ("Media Opp.").

statements with knowledge or reckless disregard of falsity, the Court should order her to pay the

Post's reasonable attorney's fees in defending this lawsuit pursuant to Virginia's immunity

statute.  Va. Code § 8.01-223.2(B).

## II.   ARGUMENT

### A.   Plaintiff Does Not Even Attempt to Show That the Post Published a Defamatory Statement of Fact About Her

Plaintiff's opposition briefs offer absolutely nothing to substantiate her libel claims

against the Post.  She asserts broadly that "the Articles at issue accuse and ascribe to Lokhova

qualities, conduct, and characteristics … that adversely affect" her career, including "infiltration

of the Seminar, surreptitious abuse of her position as a graduate student to compromise a U.S.

intelligence official, ulterior and corrupt motives, dishonesty and deception," by implying that

she was a "spy" who had an "affair" with General Flynn.  Halper Opp. at 12, 14.  But she does

not bother to show how *the Post* ever published any statements making those accusations, either

explicitly or by implication.

Plaintiff's defamation claim against the Post arises from the publication of precisely two

(2) statements that Plaintiff claims are false and defamatory: (1) that Halper "attended" the

February 2014 CIS dinner and (2) that "Halper and Dearlove were disconcerted by the attention

the then-DIA chief [Flynn] showed to a Russian-born graduate student who regularly attended

the seminars."  Am. Compl. ¶ 171.  The first statement has nothing to do with Plaintiff, is not

remotely defamatory of anyone, and is consistent with the reporting in an article that Plaintiff

herself "verified" as accurate.  *See id.* ¶ 169; Times Interview at 3 (referring to Halper as

"another American present at the dinner"); Post Mem. at 15.  The second statement does not

mention Plaintiff by name, and even if it were construed to be of and concerning her, cannot be

reasonably read to convey any defamatory meaning about *her*.  *See generally* Post Mem. at 15-

19.  That people were disconcerted by *Flynn's* actions does not "hold [Plaintiff] up to scorn, ridicule, or contempt" or "throw contumely, shame, or disgrace upon [her]," as would be necessary to support a libel claim.  *Va. Citizens Def. League v. Couric*, 910 F.3d 780, 783 (4th Cir. 2018) (citation omitted).

As the Virginia Supreme Court held in *Webb v. Virginian-Pilot Media Companies*, a plaintiff cannot bring a defamation claim based on statements that *someone else* may have behaved inappropriately, where there is no explicit or implicit suggestion that the plaintiff herself did anything wrong. 287 Va. 84, 90–91 (2014) (holding that article "insinuate[ing] that [plaintiff's son] may have benefited from special treatment" by school disciplinary authorities was not defamatory of plaintiff where the article did not "create a reasonable implication that [the plaintiff] solicited or procured the insinuated special treatment").  Plaintiff herself cites *Webb* as setting forth governing standard for defamatory meaning in Virginia, *see* Media Opp. at 11, but makes no effort to reconcile its holding with her claims against the Post.[3]

In fact, after (correctly) setting forth Virginia law requiring that a defamatory implication must be "reasonably drawn from the words actually used," Media Opp. at 11 (quoting *Webb*, 287 Va. at 89), Plaintiff devotes a single, conclusory paragraph to arguing how the Post Article (along with the other articles in suit) are "each capable of a defamatory meaning":

> Each Article, read as a whole, conveys a defamatory implication: that Lokhova, portrayed as a Russian agent or "Russian intelligence", engaged in conduct that was intended to compromise General Flynn. The Media Defendants falsely portrayed Lokhova's conduct as being so alarming that American authorities were

---

[3] Plaintiff argues that Virginia law applies to her claims.  The Post takes no position as to whether Virginia law properly applies to all claims against all of the defendants in this case, and notes that, as a Washington, D.C. publisher, it is generally subject to D.C. law.  However, as noted in the Post's opening brief, Plaintiff's claims fail under either Virginia or D.C. law.  *See* Post Mem. at 11 n.6.

warned. Their depiction of events at the February 2014 dinner is a material,
heedless, palpable and reckless departure from the truth.

Media Opp. at 12.  That's it.  Nowhere does Plaintiff even attempt to show how <u>any</u> of these

"implications" can be drawn from the Post Article (or anything else published by the Post, for

that matter), and, indeed, they cannot be:

- The Post Article <u>never</u> states or implies that Plaintiff—who is not even named in

the Article—was a "Russian agent or 'Russian intelligence.'"  It simply refers to a "Russian-born

graduate student," which Plaintiff indisputably was.

- The Post Article <u>never</u> states or implies that Plaintiff "engaged in conduct" of <u>any</u>

kind, let alone conduct that was "intended to compromise General Flynn."  It states only that

Halper and Dearlove were disconcerted by *Flynn*'s actions *towards* a Russian-born graduate

student, with no insinuations about any actions *by* that graduate student.

- And the Post Article <u>never</u> refers to American authorities being warned of

anything related to Flynn's actions at the 2014 CIS dinner, though, even if it had, that would also

not be defamatory of Plaintiff.

Plaintiff's argument that the Post Article contains actionable statements of *fact* (as

opposed to non-actionable opinion) is similarly deficient.  She cites the general principle that the

Court must "consider the statement as a whole, rather than isolating one portion of the statement

from another," when deciding whether a statement is "one of fact or opinion."  Media Opp. at 12.

She makes the broad statement that "each of the Articles contains facts which are provably

false," but discusses factual statements only from the WSJ Article and the NYT Article.  She

neglects to address the statements in the Post Article at all.  That's just as well, since the

statement in the Post Article is manifestly <u>not</u> factual in nature.  The case Plaintiff herself cites

states that, "[w]hen a statement is relative in nature and depends largely on a speaker's

viewpoint, that statement is an expression of opinion."  *Hyland v. Raytheon Tech. Servs. Co.*, 277 Va. 40, 47 (2009) (citations omitted).  As the Post explained in its Motion, a characterization of an individual's subjective reaction to events as "disconcerted" is precisely such a statement.  *See* Post Mem. at 19-22.  Plaintiff does not try to argue otherwise.

Finally, Plaintiff does not even establish that the Post Article is "of and concerning" her in the first place.  She cites the legal principle that

> statements or publications by the *same defendant* regarding one specific subject or event and made over a relatively short period of time, *some of which clearly identify the plaintiff* and others which do not, may be considered together for the purpose of establishing that the plaintiff was the person "of or concerning" whom the alleged defamatory statements were made.

Halper Opp. at 13 (citing *Gazette, Inc. v. Harris*, 229 Va. 1, 37 (1985)) (emphasis added).  But she fails to account for the fact that, when the Post Article was published, the name "Svetlana Lokhova" had <u>never</u> appeared in the Post, either in print or online.[4]  However many "Russian-born graduate student[s] who regularly attended the [Cambridge] seminars" there were, nothing published *by the Post* would have "clearly identif[ied] the plaintiff" by name, in the Post Article or otherwise.

In sum, given Plaintiff's near-abandonment of her defamation claim against the Post, and for the reasons amply set forth in the Post's Motion, the claim should be dismissed with prejudice.

---

[4] In fact, the first and only time that Plaintiff's name appeared in any Post publication was on July 24, 2019, after this action was initiated, when it published a transcript of Robert S. Mueller III's testimony before the House Intelligence Committee.  *See* https://wapo.st/33jHbwE. Plaintiff's name was mentioned by Rep. Devin Nunes (who is represented by Plaintiff's counsel in other actions) in questioning Mr. Mueller.  *Id.*

**B.     Plaintiff's Bare Allegations of the Elements of Actual Malice Cannot Overcome the Protections of Virginia's Immunity Statute**

As set forth in the Post's Motion—and not rebutted by Plaintiff—the defamation and tortious interference claims against the Post fail for the independent reason that they are barred by the Virginia immunity statute protecting statements made on "matters of public concern."  Va. Code § 8.01-223.2(A).  Plaintiff does not dispute that the statements at issue in this case "relate to matters of public concern," nor does she address the application of the immunity statute to her claims against the Post in particular.  But she does assert that she has sufficiently alleged actual malice, citing the nine "interrelated bases" listed in Paragraph 189 of the Amended Complaint. *See* Halper Opp. at 15-18.  She also makes the blanket assertion that the issue of actual malice "is a fact-intensive inquiry that cannot be resolved on a motion to dismiss under Rule 12(b)(6)." Halper Opp. at 18 n.14.

Plaintiff is flatly incorrect that actual malice cannot be adjudicated on a motion to dismiss.  To take just one example, in *Mayfield v. NASCAR, Inc.*, 674 F.3d 369 (4th Cir. 2012), the Fourth Circuit affirmed the Rule 12(b)(6) dismissal of a defamation for failure to plausibly allege actual malice.  *Id.* at 377-78.  Other courts routinely do the same.  *See, e.g.*, *Biro v. Condé Nast*, 807 F.3d 541, 546 (2d Cir. 2015) (affirming Rule 12(b)(6) dismissal of defamation claim for failure to allege actual malice); *Greer v. Petersburg Bureau of Police,* 2017 WL 1427246, at *4 (E.D. Va. Apr. 19, 2017) ("While the Complaint makes conclusory statements that Defendants acted with malice, its factual allegations are insufficient to raise Plaintiff's right to relief above the speculative level."); *Fairbanks v. Roller*, 314 F. Supp. 3d 85, 92-93 (D.D.C. 2018) (same); *Deripaska v. Associated Press*, 282 F. Supp. 3d 133, 143 (D.D.C. 2017) (same).

Turning to Plaintiff's purported bases for a finding of actual malice, none of them "raise [her] right to relief above the speculative level."  *Mayfield*, 674 F.3d at 377.  *First*, her list

6

consists largely of broad generalities applied indiscriminately to all of the "Defendants."  She

asserts, for example, that the "Defendants" "made up the story out of whole cloth,"

"manufactured a false narrative," "abandoned all journalistic standards," and "chose to

manufacture and publish false and scandalous statements."  Halper Opp. at 15-16, 17; *see* Am.

Compl. ¶ 189.  "This kind of conclusory allegation—a mere recitation of the legal standard—is

precisely the sort of allegations that *Twombly* and *Iqbal* rejected."  *Mayfield*, 674 F.3d at 377-78.

Plaintiff vigorously maintains that Halper was the source for all the Media Defendants but, even

assuming *arguendo* he was a source and even assuming again *arguendo* the bias Plaintiff

charges, "act[ing] on the basis of a biased source and incomplete information does not

demonstrate with clear and convincing evidence that the defendants realized that their statement

was false or that they subjectively entertained serious doubts as to the truth of their statement."

*Lohrenz v. Donnelly*, 350 F.3d 1272, 1284 (D.C. Cir. 2003) (citation, quotation marks, and

brackets omitted).

     *Second*, to the extent Plaintiff's allegations gesture toward specificity, they have nothing

to do with the Post.  For example, she asserts that the defendants "use[d] insulting words that

were unnecessarily strong and that constitute violent, abuse, hateful, sensational language," but

does not explain how "Russian-born graduate student" or "disconcerted" could possibly be

characterized in this manner.  Halper Opp. at 17.[5]

     *Third*, Plaintiff does not plausibly allege that the Post "knew [its] statements were false,

and possessed information that demonstrated the falsity of their statements."  Halper Opp. at 15.

---

[5] She also alleges that "[t]he Media Defendants disregarded Lokhova and others'
communications and pleas to retract the defamatory statements," but never alleges that any such
"pleas" were communicated to the Post.  *Id.*  In any event, the "actual malice inquiry focuses on
the defendant's state of mind at the time of publication", "we know of no authority that would
*require* a retraction."  *Kahl v. Bureau of Nat'l Affairs*, 856 F.3d 106, 118 (D.C. Cir. 2017).

On the contrary, the statement that Halper attended the 2014 dinner is substantiated by the *Times* Interview that Plaintiff herself confirmed as "accurate" to the Post's reporter before the Post Article was published.  *See* Am. Compl. ¶ 169.  And Plaintiff does not point to any information the Post possessed that would cast doubt on whether Halper and Dearlove were "disconcerted" by Flynn's actions—she points only to information *in her own possession* (such as an email from Dearlove) that she believes undermines the *sincerity* of Dearlove's concern over the incident.  *See* Post Mem. at 20-21.  But that does not plausibly show that the Post had any awareness of the falsity of the statements it actually published.[6]

Above all, Plaintiff fails to grapple with the reality that, as she herself alleges in the Complaint, the Post Article was preceded by (and is fully consistent with) over a year's worth of articles published in some of the most reputable newspapers in the world, including the *New York Times*, *Wall Street Journal*, *Times* of London, the *Guardian*, the *Telegraph* and the *Daily Mail*.  *See* Post Mem. at 4-8.  Indeed, the *Times* of London had published an op-ed by Plaintiff's "mentor," Professor Christopher Andrew, who attended the dinner and described what transpired.  Plaintiff offers no explanation as to how the Post's reliance on "previously published reports in reputable sources" does not, on its own, "preclude[] a finding of actual malice as a matter of law."  *McFarlane v. Sheridan Square Press, Inc.*, 91 F.3d 1501, 1510–11 (D.C. Cir. 1996) (citation omitted).

---

[6] The one paragraph in the Amended Complaint that Plaintiff cites related to the Post is that "[p]rior to publication, Hamburger talked to Ignatius," and therefore knew that "the facts stated in the Post Article were false and unverifiable."  Am. Compl. ¶ 168; *see* Halper Opp. at 15 (citing, *inter alia*, Am. Compl. ¶ 168).  But she does not allege that Ignatius had (or could have conveyed) any information that is inconsistent with what the Post Article actually says.  *See* Post Mem. at 25 (explaining that Plaintiff had previously denied to Ignatius that she and General Flynn had had an affair—a fact that is neither stated nor suggested by the Post Article).

*Finally*, Plaintiff asserts that Defendants "exhibited an extreme bias and institutional hatred for Lokhova" and acted "out of a desire to hurt Lokhova and to permanently stigmatize her." Halper Opp. at 16, 17-18. But Plaintiff provides absolutely no facts to plausibly support these hyperbolic accusations. Moreover, her argument confuses the constitutional and common-law definitions of "malice." As the Supreme Court has made clear, "[a]ctual malice under the *New York Times* standard should not be confused with the concept of malice as an evil intent or a motive arising from spite or ill will." *Masson v. New Yorker Magazine, Inc.*, 501 U.S. 496, 510–11 (1991). Accordingly, "the actual malice standard is not satisfied merely through a showing of ill will or 'malice' in the ordinary sense of the term." *Harte-Hanks Commc'ns, Inc. v. Connaughton*, 491 U.S. 657, 666–67 (1989) (citations omitted). The Post included the denial of any inappropriate conduct by the unnamed student and the Defense Department official accompanying Flynn, still further evidence of no actual malice or ill will.

At bottom, Plaintiff's conclusory recitation of boilerplate examples of "actual malice" cannot remedy her failure to plausibly allege that *the Post* acted with actual knowledge of falsity or a high degree of awareness of probable falsity. Her claim should therefore be dismissed pursuant to Virginia's immunity statute and reasonable attorney's fees and costs awarded.

### C.   Plaintiff Has Effectively Abandoned Her Tortious Interference Claim Against the Post

In its Motion, the Post identified a host of fatal defects in Plaintiff's tortious interference claim, each of which warrants dismissal: it is an improper re-labeling of her defamation claim (Post Mem. at 26-27); Plaintiff does not allege that the Post knew of her business relationships, employed any improper means, or was in competition with her (*id.* at 27-28); and at least one of Plaintiff's contracts appears to have fallen through prior to any of the allegedly unlawful conduct (*id.* at 28). Plaintiff does not respond to any of these points. Her only argument about the claim

appears in her brief opposing Halper's motion to dismiss, and focuses exclusively on Halper:
"Lokhova alleges the specific contracts and business expectancies that *Halper* interfered with …,
how and why *Halper* knew of Lokhova's book deals, employment and academic posts …, and
that the improper methods employed *by Halper* caused Lokhova to lose her book deals and
business expectancies."  Halper Opp. at 22 (citations omitted, emphasis added).  Because
Plaintiff has not made any attempt to defend her tortious interference claim against the Post, the
Court should deem it abandoned.  *See, e.g.*, *Ferdinand–Davenport v. Children's Guild*, 742 F.
Supp. 2d 772, 777 (D. Md. 2010).  And, in any event, the claim fails for the unrebutted reasons
set forth in the Post's Motion.  *See* Post Mem. at 26-28.

> **D.**      **Plaintiff's Conspiracy Claim Is Wholly Implausible**

In its Motion, the Post pointed out the numerous deficiencies in Plaintiff's conspiracy
claim, including that she has failed to state any underlying tort, the claim is time-barred to the
extent it is based on conduct prior to May 2018, and, most fundamentally, because the Complaint
"contains only conclusory or general allegations of conspiracy, which are insufficient to
withstand a motion to dismiss."  Post Mem. at 29 (quoting *Firestone v. Wiley*, 485 F. Supp. 2d
694, 703 (E.D. Va. 2007) (Ellis, J.)).  In opposition, Plaintiff simply rehashes those "conclusory"
and "general" allegations, but does not point to a single fact that would plausibly support her
claims that the Post—or any of the Media Defendants—were involved in an elaborate conspiracy
to ruin her reputation.  Plaintiff is correct that a conspiracy can be proven through circumstantial
evidence, *see* Media Opp. at 13-14, but to survive a motion to dismiss she must set forth specific
factual allegations that are sufficient to "raise [her] right to relief above the speculative level."
*Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007).  This she does not do.

Plaintiff tries to substantiate her conspiracy claim by citing to a seemingly random
selection of paragraphs in the Amended Complaint.  *See* Halper Opp. at 9 (citing Am. Compl.

¶¶ 3, 20, 21, 27, 28, 74, 80-82, 93, 101-02, 119, 153-54, 162, 164); *see* Media Opp. 13 (citing

Am. Compl. ¶¶ 101-07, 153-58).  But apart from general allegations (lacking any specific factual

foundation) that Halper "colluded" with any and all of the Media Defendants "to leak false

statements" about Plaintiff and General Flynn, Am. Compl. ¶ 20, none of the cited allegations

relate to the Post at all.  The sole exception is an allegation that one of the Post's reporters,

Robert Costa, appeared on an MSNBC program to talk about Halper (without even alluding to

Plaintiff), and that an unrelated individual made statements referring to Plaintiff on the same

program.  *See id.* ¶ 164.  Even setting aside the fact that a claim based on the airing of this

program on May 18, 2018 would be time-barred (*see* Post Mem. at 9 n.5), Plaintiff offers no

explanation as to how a newspaper reporter appearing on a prominent cable news show to

discuss his reporting somehow constitutes "plausible grounds to infer an agreement" to defame

Plaintiff, particularly when the reporter did not even allude to Plaintiff.  *Twombly*, 550 U.S. at

556.

Finally, Plaintiff's reliance on *Steele v. Goodman*, 382 F. Supp. 3d 403, 423-24 (E.D. Va.

2019) (*see* Halper Opp. at 9) is inapt.  In *Steele*, the court denied a motion to dismiss the

plaintiff's claims that the defendant had conspired with her co-defendants to defame him.  The

plaintiff in *Steele* provided extensive factual allegations that the defendant, an internet

personality, had personally co-produced "dozens" of allegedly defamatory YouTube videos with

her co-defendants, "'scripted' the videos ahead of time" with her co-defendants, and "agreed

upon the thesis, theme and tone" of the videos in advance.  *Id.* at 423.  The court held that

"[t]aken together," those allegations sufficed to state a claim for conspiracy against the

defendant, even if she was not involved in the production of every single allegedly defamatory

video.  *Id.* at 423-24.  Here, by contrast, Lokhova bases her conspiracy theory on unsupported

allegations of a shadowy agreement among "known proponents of the Russia 'collusion' narrative," Halper Opp. at 9, and the unsurprising fact that, when newsworthy information emerges (for example, about the background to an ongoing law enforcement investigation of the President of the United States), multiple news organizations tend to cover the events at the same time.  The "plausibility" standard is designed to "weed out" precisely this type of "groundless claim[]."  *Wood v. Southside Physician Network, LLC*, 2019 WL 3416665, at *6 (E.D. Va. July 29, 2019).

## III.    CONCLUSION

The Court should dismiss Lokhova's claims against the Post with prejudice.  Plaintiff, represented by counsel, has already "amended [her] complaint once after a prior set of briefings" and "any further amendment would be futile."  *Harsy v. Mid Am. Apartment Cmtys., Inc.*, 2017 WL 2728034, at *10 (E.D. Va. June 22, 2017) (dismissing with prejudice).  Reasonable attorneys' fees and costs should be awarded pursuant to Va. Code § 8.01-223.2(B).


Dated: October 17, 2019                         Respectfully submitted,

                                                */s/ Patrick J. Curran Jr.*
                                                Patrick J. Curran Jr. (VA Bar No. 86144)
                                                Laura Handman (admitted *pro hac vice*)
                                                Eric J. Feder (admitted *pro hac vice*)
                                                DAVIS WRIGHT TREMAINE LLP
                                                1919 Pennsylvania Avenue, N.W., Suite 800
                                                Washington, DC  20006
                                                Ph: 202-973-4200; Fax: 202-973-4499
                                                patcurran@dwt.com
                                                laurahandman@dwt.com
                                                ericfeder@dwt.com

                                                *Attorneys for Defendants*
                                                *WP Company LLC d/b/a The Washington Post*

## CERTIFICATE OF SERVICE

I, Patrick J. Curran Jr., certify that on October 17, 2019, I caused a copy of the foregoing

to be served upon all parties via this Court's CM/ECF system.


*/s/ Patrick J. Curran Jr.*
Patrick J. Curran Jr.