IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
Alexandria Division

| | |
|---|---|
| SVETLANA LOKHOVA ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | Civil Action No. 1:19-cv-632-TSE |
| ) | |
| ) | |
| STEFAN A. HALPER, ) | |
| et al ) | |
| ) | |
| Defendants. ) | |
| ) | |

# PLAINTIFF'S MEMORANDUM IN OPPOSITION TO DEFENDANT HALPER'S MOTION FOR LEAVE TO FILE SUPPLEMENTAL MEMORANDUM

Plaintiff, Svetlana Lokhova, by counsel, pursuant to Local Civil Rule 7(F), respectfully submits this Memorandum in Opposition to the motion for leave to file a supplemental memorandum in support of his motion for sanctions notwithstanding stay order [*ECF No. 85*] filed by defendant, Stefan A. Halper ("Halper"):

## I. INTRODUCTION

On December 9, 2019, the Office of the Inspector General ("OIG") published its *Review of Four FISA Applications and Other Aspects of the FBI's Crossfire Hurricane Investigation* (the "IG Report"). The IG Report reinforces Plaintiff's description of Halper in the Amended Complaint and in Plaintiff's opposition to Halper's motion for sanctions. Plaintiff's description is 100% accurate. Halper has been involved in

1

clandestine campaign operations and dirty tricks for almost five decades now. The IG Report verifies a slew of facts about Halper's past, about the way he conducts operations, and his involvement in the FBI's counterintelligence operation against the Trump campaign in 2016. The OIG found as follows:

- In or about December 2008, Halper (identified as "Source 2" in the IG Report) was hired as an FBI source;

- Halper was fired from the FBI in 2011 "for cause" because of (a) "aggressiveness toward handling agents" as a result of what Halper "perceived as not enough compensation", and (b) "questionable allegiance to the [intelligence] targets" with which Halper maintained contact;

- Halper was re-hired as an FBI source in March 2011;

- During the 2016 Presidential campaign, the FBI tasked Halper, which resulted in multiple interactions with Carter Page and George Papadopoulos, both during and after the time they were affiliated with the Trump campaign, and one with a high-level Trump campaign official (Sam Clovis) who was not a subject of the investigation;

- Halper's involvement in the Crossfire Hurricane investigation arose because he "had been affiliated with national political campaigns since the early 1970s" and he "might have information about, and potentially may have met, one or more of the Crossfire Hurricane subjects";

- Halper told the Crossfire Hurricane team that he had known Trump's then campaign manager, Manafort, for a number of years and that he had been previously acquainted with Michael Flynn;

- When Halper raised the issue of an "October Surprise" with Carter Page, Page said "there's a different October Surprise ... [a]lthough maybe some similarities" to the October Surprise in the 1980 Presidential Campaign;

- Halper wore a wire and all of his interactions were "consensually monitored and recorded by the FBI"; and

- The OIG found "no supporting documentation" for many of the statements supplied by Halper and much of the information about Halper.

[https://www.justice.gov/storage/120919-examination.pdf (IG Report, pp. xvi, 79-80, 305, 313-333, 418-423)].

## II. RESPONSE TO MOTION

The latest motion by Halper violates 28 U.S.C. § 1927. The motion multiplies this proceeding needlessly and vexatiously. There is no justification for this motion. The motion is another dirty trick. This time, the political opponent is Plaintiff's counsel. Contrary to Halper's representations, the Court's memorandum opinion in *Steele v. Goodman* does not "make[] relevant the fact that Plaintiff's counsel has continued to file a series of lawsuits, including in this Court, disparaging parties, witnesses, and their counsel". There is no "series of lawsuits" or any "lawsuits". There is no disparaging of parties, witnesses or any counsel. Halper's proposed supplemental memorandum contains unjustified and baseless *ad hominem* attacks on Plaintiff and her counsel.

- Plaintiff and her counsel have **not** "misused" this Court or any Court. Plaintiff has presented facts about Halper. Those facts are fully supported by the public record, including multiple descriptions of Halper, his political operations and his dirty tactics.

- Plaintiff's counsel has **not** "embarked upon" any kind of "campaign of vilifying parties in a series of defamation lawsuits". Plaintiff's counsel represents Plaintiffs in defamation actions across the Country, including multiple pending cases in Virginia and cases in West Virginia, Texas, Iowa, Florida and New York. There is no "pattern" of abusive litigation in any case.

- Plaintiff's counsel fully complied with Judge Lauck's July 2019 Order. The Court in *Steele v. Goodman* denied the defendant's motions to dismiss and the matter is set for trial in March 2020.

Halper's counsel's statements in the proposed supplemental memorandum are baseless hyperbole. They are unprofessional and completely untrue.[1]

---

[1] Halper's counsel claims that "Plaintiff's counsel uses meritless claims to target disfavored media" He cites the pending case of *Nunes v. Twitter*. [*Halper Motion, p. 6 fn. 9*]. What counsel fails to point out is that the Court in *Nunes v. Twitter* **denied** the defendants' motions to dismiss. A true copy of the Court's letter opinion is attached as Exhibit "A".

>Halper's counsel represents that:
>
>"Since March 2019, Plaintiff's counsel has brought multiple suits with pleadings labeling adversaries with vitriolic insults to advance ulterior political and legal agendas and investigations, which have now ripened into efforts at witness intimidation".

[*Halper Motion, p. 6*].  **There is no truth to any of these wild, incendiary and regrettable allegations**.  Each of the lawsuits and allegations cherry-picked by Halper's counsel is fully supported by the evidence and controlling law.  None of the suits was "filed in retaliation" for anything or against anyone.  *Nunes v. Fusion GPS* involves multiple acts of racketeering activity (obstruction of justice) committed by the same political operatives (Fusion GPS and Glenn Simpson) responsible for the fabricated "Steele dossier" – the same "Steele dossier" that that was the subject of the IG Report.  *Patel v. Politico* involves defamatory statements published in articles in October 2019.  *Nunes v. CNN* involves demonstrably false statements published by CNN online and on television on November 22, 2019.  Any argument in the pleadings in these cases is just that – argument.  Each case will rise or fall based on the facts alleged.  None of the defendants has suggested an improper purpose in filing the suits.  Responses to the complaints have not been filed and no Court has ruled on the merits.  However, multiple Courts in multiple jurisdictions in 2019 in multiple extremely contentious cases have **denied** defendant's motions to dismiss in cases being handled by Plaintiff's counsel, *e.g.*:

>*Steele v. Goodman*, Case 3:17-cv-601 (E.D. Va.) (Documents 85 and 86) (Memorandum Opinion and Order on Motions to Dismiss)
>
>*Butowsky v. Folkenflik*, Case 4:18-cv-442 (E.D. Tex.) (Document 58) (Report and Recommendation of Magistrate Judge)
>
>*Butowsky v. Folkenflik*, Case 4:18-cv-442 (E.D. Tex.) (Document 65) (Order Adopting Report and Recommendation of Magistrate Judge)

4

*Nunes v. Twitter*, Case CL19-1715 (Henrico Circuit Court)
(Letter Opinion denying motions to dismiss)

Most recently on December 19, 2019, the District Court in *Morrissey v. WTVR*, Case 3:19-cv-747 (E.D. Va.), denied in part defendant's motion to dismiss plaintiff's defamation and insulting words claims, and set the case for trial.

There is no "evolving bad faith conduct" by Plaintiff or her counsel. The sole purpose of this action is to vindicate centuries old rights. The law of defamation protects one of the most important and well-recognized liberty interests recognized by the law – a person's "absolute" right to an unimpaired reputation. In *Fuller v. Edwards*, the Virginia Supreme Court recognized that "[o]ne's right to an unimpaired limb and to an unimpaired reputation are, in each instance, absolute and has been since common law governed England. Indeed, an impaired reputation is at times more disastrous than a broken leg." 180 Va. 191, 198, 22 S.E.2d 26 (1942) (cited in *Gazette, Inc. v. Harris*, 229 Va. 1, 7, 325 S.E.2d 713 (1985) ("In Virginia, as in other states, the law of defamation historically has protected a basic interest. The individual's right to personal security includ[ing] his uninterrupted entitlement to enjoyment of his reputation.")). Importantly, in *Rosenblatt v. Baer*, the United States Supreme Court expressly affirmed that:

> "'Society has a pervasive and strong interest in preventing and redressing attacks upon reputation.' The right of a man to the protection of his own reputation from unjustified invasion and wrongful hurt reflects no more than our basic concept of the essential dignity and worth of every human being—a concept at the root of any decent system of ordered liberty … The destruction that defamatory falsehood can bring is, to be sure, often beyond the capacity of the law to redeem. Yet, imperfect though it is, an action for damages is the only hope for vindication or redress the law gives to a man whose reputation has been falsely dishonored … Surely if the 1950's taught us anything, they taught us that the poisonous atmosphere of the easy lie can infect and degrade a whole society."

5

383 U.S. 75, 92-93 (1966). Consistent with the constitutional right of an individual to the uninterrupted enjoyment of his name and reputation, the United States Supreme Court has repeatedly and without exception recognized that libelous speech is not protected by the First Amendment. Simply put, there is "no constitutional value in false statements of fact." *Gertz v. Robert Welch, Inc.*, 418 U.S. 323, 349-350 (1974); *id. United States v. Alvarez*, 132 S. Ct. 2537, 2560 (2012) ("false factual statements possess no First Amendment value."); *Bose Corp. v. Consumers Union of the United States, Inc.*, 466 U.S. 485, 504 (1984) (same) (cited in *Pendleton v. Newsome*, 290 Va. 162, 173, 772 S.E.2d 759 (2015)); *id. McKee v. Cosby*, 139 S.Ct. 675, 680 (2019) (Thomas, J., concurring) ("Before our decision in *New York Times [v. Sullivan]*, we consistently recognized that the First Amendment did not displace the common law of libel. As Justice Story explained, 'The liberty of speech, or of the press, has nothing to do with this subject. They are not endangered by the punishment of libellous publications. The liberty of speech and the liberty of the press do not authorize malicious and injurious defamation.' The Court consistently listed libel among the 'well-defined and narrowly limited classes of speech, the prevention and punishment of which have never been thought to raise any Constitutional problem'") (numerous citations and quotations omitted).

This case is not at all like *Leigh v. Avossa*. *Leigh* involved numerous egregious social media posts by an attorney representing himself. The social media posts were directed to defendants, witnesses, deponents or attorneys in two federal civil cases. Some of the posts were reasonably interpreted as veiled threats to defendants, witnesses, deponents or attorneys involved in the two cases. A few of the posts were racially

6

charged and had violent or morbid themes that raised legitimate safety concerns in the litigation. The posts in their totality caused a disruption of the discovery process and caused the Court to enter Orders on an expedited basis granting protective relief and setting special security conditions (including the presence of an armed police officer) for the remaining depositions. 2017 WL 2799617, at * 2-6 (S.D. Fla. 2017). Here, Plaintiff filed a complaint and amended complaint that contained truthful allegations about Halper. Halper objects to one word in the complaint. He could have filed a motion to strike that one word or a sealing motion, but he did not. Contrary to Halper's suggestion, Plaintiff did not broadcast the complaint through "serial social media posts". She set up a GoFundMe page simply to help pay for expenses after Halper's defamation destroyed her livelihood.

Halper's proposed supplemental memorandum rehashes arguments previously made. Halper's counsel suggests that Plaintiff has not alleged a conspiracy between Halper and others, including the Media Defendants, to defame Plaintiff and tortiously interfere with her contracts and business expectations. These matters have been fully briefed. Plaintiff specifically alleges who participated in the conspiracy, what each participant did to further the false narrative about Plaintiff and General Flynn, when the acts in furtherance of the conspiracy took place, and how Plaintiff was damaged. Halper attempts to refute the allegations of a conspiracy by referring, *inter alia*, to Plaintiff's tweets. Halper delves into evidence and argues that the existence of a conspiracy is "implausible". The interjection of these matters, including questions of credibility, should convert Halper's motion to dismiss into one for summary judgment.

7

## CONCLUSION

The narrative being spun by Halper in his motion is untrue and dangerous. Halper is asking this Court to comment on unrelated litigation, including cases in which unrelated plaintiffs have prevailed on motions to dismiss. *See, e.g., Nunes v. Twitter*. The merits of each claim by each plaintiff in each case must be left to the trier of fact in each case. Damages in defamation cases are assessed by juries. In determining the amount of damages to be awarded, the jury may consider the occasion on which the statements were made and the extent of the publication, the nature and character of the insult, the probable effect on those who heard the statements, and the probable and natural effect of the statements upon the plaintiff's personal feelings and upon her standing in the community and in business. *See, e.g., Government Micro Resources, Inc. v. Jackson*, 271 Va. 29, 624 S.E.2d 63 (2006).

The purpose of each defamation case is to vindicate the well-established, indeed "absolute", liberty interest every person has in their name and reputation. That liberty interest is one of the oldest known to the common law. In each of the unrelated cases being handled by Plaintiff's counsel, the breadth of publication is staggering. The nature, character and actual effect of the insults is exceptional. The damage demands reflect the extreme injury caused by the defamation. Halper's counsel suggests that Plaintiff's counsel is using "meritless" claims to "intimidate both parties and witnesses". These regrettable conclusory statements are nothing but unsupported bluster.

For the reasons stated above, Plaintiff requests the Court to deny Halper's motion for leave to file a supplemental brief.

DATED: May 23, 2019

SVETLANA LOKHOVA

By: */s/ Steven S. Biss*
Steven S. Biss (VSB # 32972)
300 West Main Street, Suite 102
Charlottesville, Virginia 22903
Telephone: (804) 501-8272
Facsimile: (202) 318-4098
Email: **stevenbiss@earthlink.net**

*Counsel for Plaintiff, Svetlana Lokhova*

## CERTIFICATE OF SERVICE

I hereby certify that on December 23, 2019 a copy of the foregoing was filed electronically using the Court's CM/ECF system, which will send notice of electronic filing to counsel for the Defendants and all interested parties receiving notices via CM/ECF.

By: */s/Steven S. Biss*
Steven S. Biss (VSB # 32972)
300 West Main Street, Suite 102
Charlottesville, Virginia 22903
Telephone: (804) 501-8272
Facsimile: (202) 318-4098
Email: **stevenbiss@earthlink.net**

*Counsel for Plaintiff, Svetlana Lokhova*